2023 IL App (2d) 230382
No. 2-23-0382
Opinion filed December 18, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of De Kalb County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 23-CF-485 |
| MATTHEW HORNE, | ) ) | Honorable Philip G. Montgomery, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Justices Hutchinson and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1       In this interlocutory appeal under Illinois Supreme Court Rule 604(h) (eff. Oct. 19, 2023),

defendant, Matthew Horne, appeals from the trial court's order granting the State's petition to deny

defendant pretrial release and ordering him detained pursuant to Public Acts 101-652 and 102-

1104 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act).[1] See *Rowe v. Raoul*,

2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). Defendant

_____

[1]The Act has also been referred to as the Safety, Accountability, Fairness and Equity-Today

(SAFE-T) Act. Neither name is official, as neither appears in the Illinois Compiled Statutes or

public acts.

argues that the State did not prove by clear and convincing evidence that (1) the proof is evident or the presumption is great that defendant committed the offenses that qualified him for pretrial detention; (2) defendant poses a real and present threat to the safety of any person or the community, based on specific, articulable facts of the case; and (3) no condition or combination of less restrictive conditions can mitigate the real and present threat to the safety of any person or the community, based on specific articulable facts of the case. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3      On September 6, 2023, the State charged defendant with two counts of aggravated battery (720 ILCS 5/12-3.05(d)(4) (West 2022)), a Class 2 felony, alleging that, on August 30, 2023, defendant struck Cheryl Senne in the head with his palm and bit her left forearm, knowing Senne to be a peace officer performing her official duties. It also charged defendant with two counts of domestic battery (*id.* § 12-3.2(a)(1)), a Class A misdemeanor, alleging that, on August 30, 2023, defendant knowingly caused bodily harm to his mother, Sandy J. Horne, in that he struck her in the face and stomach with his fist.

¶ 4      The police synopsis completed by Deputy Chief Jeff Wig related that, on August 30, 2023, Senne and Wig responded to 950 Constance Lane in Sycamore for a report of a domestic battery. Upon arrival, Wig spoke with Sandy, who stated that defendant attacked her inside their residence. They spoke outside, as Sandy had run from the home. She stated that defendant punched her with his fist several times on her head, face, and upper chest and shoulder areas. Wig observed red marks on Sandy's upper body and neck/face areas. She refused to be photographed. Sandy further related to Wig that she asked a neighbor to call 911 because she believed that defendant was going to kill her.

¶ 5    Wig stated that defendant (age 29, 6 feet tall, and weighing 250 pounds) was inside the residence and that he and Senne approached the residence from the rear sliding glass door. Senne slid it slightly open, and defendant was inside, yelling. As Senne began to speak to him, defendant struck Senne in the head with his palm, sending her head back. Wig pulled defendant by his arm from the residence and took control of him on his right side. Senne called for additional officers. She also took control of defendant's left side. Wig dropped his right leg to take himself and defendant to the ground to gain control of defendant. A struggle ensued, Senne's left arm got near defendant's mouth, and defendant bit Senne and would not release his bite. Senne screamed and yelled at defendant to release his bite. Wig drove his thumb and knuckle into the mandible area of the left side of defendant's jaw until he released his bite. After defendant released his bite, Senne and Wig controlled defendant until additional officers arrived.

¶ 6    While he was restrained, defendant yelled "bizarre, nonsensical and threatening things," including that he was going to shoot Senne and Wig, he did not believe they were police officers, they were pedophiles and "we just killed them all," they had killed the real cops and wore their uniforms, the police were about to be tortured and were all about to die, and he was going to "f*** all of us (the police) up right now."

¶ 7    On September 29, 2023, defendant was admonished of the charges against him. He was present via Zoom and represented by the public defender. Also on that date, the State petitioned to deny defendant pretrial release (725 ILCS 5/110-6.1(a)(4) (West 2022)), alleging that defendant was charged with domestic battery and aggravated battery and his pretrial release posed a real and present threat to the physical safety of any person or the community.

¶ 8    A pretrial services bond report, also dated September 29, 2023, listed defendant's prior offenses. They included: retail theft (2013); consumption of liquor by a minor, driving under the

influence, and speeding more than 35 miles per hour over the limit (2014); domestic battery, for which he received supervision (2016); domestic battery and criminal damage to property not exceeding $500, both of which he was found guilty and for which he was sentenced to 12 months' conditional discharge and spent 67 days in jail for failing to satisfy the conditions imposed (2021); violation of a domestic violence bail bond, of which he was found guilty and for which he was sentenced to 12 months' conditional discharge and served 67 days in jail (2021); and criminal damage to property not exceeding $500, of which he was found guilty and for which he was sentenced to 18 months' probation and four days in jail (May 5, 2022). The report also related that defendant reported that he has schizophrenia and dissociative identity disorder, for which he takes medication. He also reported that he has abused drugs and alcohol in the past and resided at a rehabilitation center. He reported that he had been living with Sandy for the past year.

¶ 9 The report also related that a pretrial risk assessment identified defendant's risk of pretrial misconduct as 5 out of a possible score of 0 through 14. Thus, there was a 90% probability that he would appear at all future hearings and that no new offenses would occur during the pendency of this case. The report stated that defendant appeared to be appropriate for pretrial release pending trial, with the following conditions: that he be placed on pretrial supervision and report to pretrial services; that he be placed on electronic home monitoring (EHM) and comply with all requirements and that a hearing be set within 30 days to evaluate the need for continued use of EHM; that defendant not contact or communicate with Sandy for a period of time determined by the court; and that, if he possesses firearms, they and his Firearm Owners Identification (FOID) card/concealed carry card be surrendered.

¶ 10 At the hearing on the State's petition, also on September 29, 2023, the State argued that defendant's violent criminal history, the nature of this case, and his statements to and violence

toward the arresting officers warranted a finding that he is a danger to Sandy as well as the community and that he should be detained. Defense counsel noted that it was the State's burden to show that the proof is evident or the presumption great that defendant committed the charged offenses. Counsel also acknowledged that domestic battery is a detainable offense but argued that the State had not met its burden by relying solely on the police synopsis. Counsel noted that Sandy was not present at the hearing to testify whether she believed that defendant was a danger, and counsel argued that the State had not proven that defendant was a danger. Counsel noted defendant was currently medicated and had spent one month at Chicago Behavioral Health, a residential mental health facility, after the incident. She argued that defendant should not be detained based on the offenses and "all the other circumstances" upon which the court could rely. Acknowledging that defendant had a criminal history, counsel asserted that it did not support detaining him.

¶ 11    The trial court granted the State's petition, denying pretrial release. It found that, based on the foregoing, the State had established by clear and convincing evidence that defendant had committed detainable offenses and that the Act's dangerousness standard had been met. In announcing its findings, the court summarized the police synopsis and the pretrial services bond report and noted that defendant was on probation for criminal damage to property, had a 2021 violation of a domestic battery bail bond, had a 2016 domestic battery charge, and scored 5 out of 14 on the pretrial risk assessment. In delineating its reasons for finding that defendant posed a real and present threat to Sandy and "to [other] persons in the community[,] that is[,]the police," and why less restrictive conditions would not avoid his threat to their safety, the court listed that (1) the alleged incident involved harassment or abuse as defined in the Illinois Domestic Violence Act of 1986 (750 ILCS 60/101 *et seq.* (West 2022)); (2) defendant has a history of domestic violence, based on the pretrial services bond report; (3) defendant may have mental health issues; (4) he has

a history of violating court orders, as he was currently on probation for criminal damage to property when he allegedly committed the charged offenses in this case; and (5) he is a threat to the police (based on his verbal threats to the officers) and to Sandy (based on his actions against her). It noted that it found the most disturbing defendant's statements while being restrained. The court also noted that it could not make findings as to whether defendant has access to weapons or a history of drug or alcohol abuse. (Defendant stated that he possessed no firearms.) The court also imposed as a condition of defendant's detention that he have no contact with Sandy and that, if he possesses a firearm, FOID card, or concealed carry permit, he surrender those upon his release.

¶ 12    In the form order the court entered, it checked the following boxes reflecting its reasons for finding that defendant should be denied pretrial release and why less restrictive conditions were not warranted: the nature and circumstances of the offense; that his prior criminal history is indicative of violent, abusive, or assaultive behavior; the identity of any person or persons to whose safety he is believed to pose a threat and the nature of the threat; any statements made by or attributed to defendant, together with the circumstances surrounding them; that, at the time of the current offenses or arrest, defendant was on probation, parole, aftercare release, mandatory supervised release, or other release from custody pending trial, sentencing, appeal, or completion of sentence; and "Other." In the "Other" category, the court repeated many of its oral findings, including that defendant has a history of domestic violence as defined within the domestic violence statute, that he has a history of violating court orders, and that he has been or is potentially a threat to other persons and may have mental health issues.

¶ 13    On October 13, 2023, defendant filed his notice of appeal, and, on November 15, 2023, the Office of the State Appellate Defender elected to file a notice in lieu of an Illinois Supreme Court Rule 604(h) (eff. Oct. 19, 2023) memorandum.

¶ 14                                    II. ANALYSIS

¶ 15                        A. Pretrial Release Provisions of Code

¶ 16    Pretrial release is governed by article 110 of the Code of Criminal Procedure of 1963 (Code), as amended by the Act. 725 ILCS 5/art. 110 (West 2022). Under the Code, pretrial release may be denied only in certain situations (qualifying offenses). *Id.* §§ 110-2(a), 110-6.1. Upon filing a timely verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed a qualifying offense, that the defendant's pretrial release poses a real and present threat to the safety of any person or the community or a flight risk, and that less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution. *Id.* § 110-6.1(e), (f).

¶ 17    If the trial court finds that the State proved a valid threat to the safety of any person or the community, the defendant is likely to flee to avoid prosecution, or the defendant failed to abide by previously issued conditions of pretrial release, the trial court must determine which pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." *Id.* § 110-5(a).

¶ 18    If the trial court determines that the defendant should be denied pretrial release, the court must make written findings summarizing the reasons for denying pretrial release, including why less restrictive conditions would not avoid a real and present threat to the safety of any person or the community, based on the specific articulable facts of the case, or prevent the defendant's willful flight from prosecution. *Id.* § 110-6.1(h)(1).

¶ 19    There is a split of authority concerning the proper standard of review for aspects of pretrial release appeals that do not involve statutory construction questions. The Fourth District has held that the trial court's determination regarding pretrial release will not be reversed absent an abuse of discretion. *People v. Inman*, 2023 IL App (4th) 230864, ¶¶ 10-11 (adopting standard after noting that bail appeals under Illinois Supreme Court Rule 604(c)(1) (eff. Oct. 19, 2023) have historically been reviewed for an abuse of discretion and that the Act does not mandate or suggest a different standard of review for appeals under Rule 604(h)). The Fifth District takes the position that the trial court's overall determination regarding pretrial release and questions as to whether the court properly considered statutory factors in determining dangerousness and/or conditions of release are reviewed for an abuse of discretion; however, it concludes that the trial court's findings that mandatory conditions of release would not protect any person or the community, that the defendant had a high likelihood of willful flight to avoid prosecution, or that the defendant failed to comply with prior conditions of pretrial release thereby requiring modification or revocation, are reviewed under the manifest-weight-of-the-evidence standard. *People v. Vingara*, 2023 IL App (5th) 230698, ¶ 10. The Fifth District came to this conclusion by relying on *In re C.N.*, 196 Ill. 2d 181, 208 (2001), a termination-of-parental-rights case setting the manifest-weight standard for reviewing parental unfitness determinations, where the State's burden of proof is clear and convincing evidence. *Vingara*, 2023 IL App (5th) 230698, ¶ 10. In a subsequent case, the Fourth District disagreed with *Vingara* and reaffirmed that only the abuse-of-discretion standard applies. *People v. Jones*, 2023 IL App (4th) 230837, ¶¶ 27-30. In *Jones*, the Fourth District concluded that a trial court's decision as to whether the State established that "release conditions would not protect the community is inextricably linked to any decision to grant or deny pretrial release" and stated that courts "enjoy broad discretion in making such decisions." *Id.* ¶ 30 (further noting that the

abuse-of-discretion standard applies when assessing fact-dependent challenges in section 2-1401 proceedings and when assessing a court's application of proper criteria when it weighs facts). We need not decide whether one or two standards apply, as our conclusion here is the same regardless. An abuse of discretion occurs when the trial court's determination is unreasonable. *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9. A court's decision is against the manifest weight of the evidence where the determination is unreasonable. *People v. Deleon*, 227 Ill. 2d 322, 332 (2008).

¶ 20                     B. Commission of Qualifying Offenses

¶ 21    Defendant argues first that the State failed to meet its burden of proving by clear and convincing evidence that the proof is evident or the presumption great that defendant committed the qualifying offense. Specifically, he contends that the State merely argued that the written *Gerstein*[2] in each case was sufficient to establish that defendant committed the qualifying offenses. He also contends that there was no testimonial evidence for any of those charges  and that no photographs or videos were submitted.

¶ 22    We conclude that the trial court did not err in determining that the State established, via clear and convincing evidence,[3] that the proof was evident or the presumption great that defendant

---

[2]A *Gerstein* hearing, mandated by the fourth amendment, affords a defendant arrested without a warrant a prompt judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest. *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975); *People v. Galan*, 229 Ill. 2d 484, 506-07 (2008).

[3]Clear and convincing evidence is "more than a preponderance of the evidence and not quite approaching the beyond-a-reasonable-doubt standard necessary to convict a person of a criminal offense." *People v. Craig*, 403 Ill. App. 3d 762, 768 (2010).

committed the qualifying offenses. Defendant was charged with two counts of aggravated battery and two counts of domestic battery. As charged, a person commits aggravated battery when, in committing battery, other than by discharge of a firearm, he or she knows the individual battered is a peace officer performing his or her official duties. 720 ILCS 5/12-3.05(d)(4)(i) (West 2022). Battery is defined as knowingly, without legal justification by any means, causing bodily harm to an individual or making physical contact of an insulting or provoking nature with an individual. *Id.* § 12-3(a). As charged, domestic battery requires that a person, knowingly without legal justification by any means, causes bodily harm to any family or household member. *Id.* § 12-3.2(a)(1). Domestic battery is a qualifying offense. 725 ILCS 5/110-6.1(a)(4) (West 2022). The evidence at the hearing on the State's petition consisted of the detailed police synopsis completed by Wig—which related the officers' arrival at the scene, including their questioning of Sandy and their interaction with defendant—and the pretrial services bond report—which listed defendant's prior offenses and included the pretrial risk assessment and defendant's self-reporting of his mental health issues, substance use history, and residence.

¶ 23 The police synopsis related that Senne and Wig responded to Sandy and defendant's home. They spoke with Sandy outside the home. Sandy stated that defendant had attacked her inside their residence and that she had run from the home to a neighbor's house to ask the neighbor to call 911 because she believed defendant was going to kill her. Sandy related that defendant punched her with his fist several times in her head, face, and upper chest and shoulder areas, and police observed red marks on Sandy's upper body and neck/face areas. In addition to detailing the qualifying offense of domestic battery, the synopsis also related that, once police entered the house, they saw defendant inside, yelling. As Senne began to speak to him, he struck her on the head with a palm strike, sending her head back. Once the officers pulled defendant down to the ground, a struggle

ensued, and defendant bit Senne's arm when it got near his mouth. She screamed and yelled at him to release his bite, and Wig drove his thumb and knuckle into defendant's mandible area until defendant released his bite.

¶ 24    In finding that the State had established by clear and convincing evidence that defendant had committed the qualifying offenses, the trial court relied on the foregoing. The evidence itself was detailed, and it was not inherently incredible; rather, it reasonably could be viewed as reliable. Defendant does not explain how it was unreasonable for the court to determine that the evidence was sufficient to meet the State's burden to show that the proof was evident or the presumption great that defendant committed the qualifying offenses. Furthermore, defendant cites no authority reflecting that it was improper for the trial court to "merely" rely on the police synopsis and the pretrial services bond report or any authority suggesting that video and/or photographs were required. Accordingly, we conclude that the court did not err in determining that the State established, via clear and convincing evidence, that the proof was evident or the presumption great that defendant committed the qualifying offenses.

¶ 25                           C. Real and Present Threat

¶ 26    Second, defendant argues that the State failed to meet its burden of proving, by clear and convincing evidence, that he poses a real and present threat to the safety of any person or the community, based on the specific articulable facts of this case. Specifically, he argues that the State merely asserted that defendant had some violent criminal history and presents as having some mental health issues. There was no evidence presented, defendant asserts, that he has issues with following court orders. Also, when questioned about Sandy's desires concerning detention, the State did not provide such information. Defendant also contends that the State relied upon

information provided by its victim coordinator, who did not complete an adequate interview. Finally, defendant notes that he is not known to possess any weapons.

¶ 27    Under the Code, factors that the trial court may consider in making a determination of dangerousness, *i.e.*, that the defendant poses a real and present threat to any person or the community, include, but are not limited to (1) the nature and circumstances of any offense charged, including whether the offense is a crime of violence, involving a weapon, or a sex offense; (2) the history and characteristics of the defendant; (3) the identity of any person to whom the defendant is believed to pose a threat and the nature of the threat; (4) any statements made by or attributed to the defendant, together with the circumstances surrounding the statements; (5) the age and physical condition of the defendant; (6) the age and physical condition of the victim or complaining witness; (7) whether the defendant is known to possess or have access to any weapons; (8) whether at the time of the current offense or any other offense, the defendant was on probation, parole, or other form of supervised release from custody; and (9) any other factors, including those listed in section 110-5 of the Code (*id.* § 110-5), the court deems to have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior. *Id.* § 110-6.1(g).

¶ 28    We conclude that the trial court did not err in determining that defendant poses a real and present threat to Sandy and the community, specifically the police. The court relied on the police synopsis and the pretrial services bond report. The court noted that the police synopsis related statements defendant made to Senne and Wig while he was restrained, including threats to torture and kill them. The pretrial services bond report reflected that defendant was on probation for criminal damage to property, evidence that reasonably reflected defendant does not follow court orders. It also listed as prior offenses a 2021 violation of a domestic bail bond (for which defendant

received 12 months' conditional discharge and served 67 days in jail), as well as a 2016 domestic battery conviction (for which he received supervision). The trial court reasonably found, based on this evidence, that defendant has a history of domestic violence and of violating court orders. It also reasonably determined that he is a threat to the police and to Sandy, who is his mother and the victim and with whom he lived.

¶ 29    Defendant's argument that the State should have provided evidence concerning Sandy's desires concerning pretrial detention fails because he cites no support for this proposition. He also notes that he is not known to possess any weapons. We do not find that this warrants reversal, as the police synopsis reflected that defendant committed violent acts without weapons. Finally, defendant's argument that the State relied upon an allegedly inadequate interview also fails, because he does not specify how it was inadequate or what information is lacking.

¶ 30                    D. Feasibility of Less Restrictive Conditions

¶ 31    Defendant's final argument is that the State failed to meet its burden of proving by clear and convincing evidence that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community, based on specific articulable facts of this case. Specifically, defendant asserts that the State argued only for detention and failed to show that defendant could not comply with other conditions, such as EHM or compliance with medications. He further contends that the State did not provide any reasoning as to why less restrictive conditions would not avoid a real and present threat to the safety of any person or the community. The State responds that this argument is without merit because defendant lives with Sandy, the victim whom he brutally attacked in this case.

¶ 32    Where the trial court finds that the State proved a valid threat to the safety of any person or the community, the court must determine which pretrial release conditions, "if any, will

reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." *Id.* § 110-5(a)(1)-(6). In reaching its determination, the trial court must consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; (4) the nature and seriousness of the specific, real, and present threat to the safety of any person or the community that would be posed by the defendant's release; (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process that would be posed by the defendant's release; and (6) when a person is charged with, as relevant here, domestic battery, the court may consider certain additional factors. *Id.* The additional factors a court may consider when a defendant is charged with domestic battery include (1) whether the alleged incident involved harassment or abuse as defined in the domestic violence statute; (2) whether the defendant has a history of domestic violence or a history of other criminal acts; (3) the defendant's mental health; (4) whether the defendant has a history of violating court orders; (5) whether the defendant has been or is potentially a threat to any other person; (6) whether the defendant has access to deadly weapons or has a history of using deadly weapons; (7) whether the defendant has a history of abusing alcohol or any controlled substance; (8) the severity of the alleged incident; (9) whether a separation from the victim of abuse or a termination of the relationship between them has recently occurred or is pending; (10) whether the defendant has exhibited obsessive or controlling behaviors toward the victim; (11) whether the defendant has expressed suicidal or homicidal ideations; and (12) any other factors the court deems have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of that behavior. *Id.* § 110-5(a)(6).

¶ 33     We conclude that the trial court did not err in determining that no conditions could mitigate the real and present threat to the safety of Sandy or the police.

¶ 34     The Code requires only that the State's petition be verified and state the grounds upon which it contends defendant should be denied pretrial release, including the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts or flight risk, as appropriate. *Id.* § 110-6.1(d)(1) (addressing contents of petition). It does not require the State to allege why release conditions would not reasonably ensure defendant's appearance or the safety of others and the likelihood of defendant's compliance with pretrial release. Thus, defendant's argument that the State argued only for detention and failed to show, or provide reasoning why, defendant could not comply with other restrictive conditions, such as EHM, fails.

¶ 35     The Code does require the trial court, in a detention order, to make written findings summarizing why a defendant should be denied pretrial release, "including why less restrictive conditions would not avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." *Id.* § 110-6.1(h)(1). The trial court here complied with this statutory requirement, giving the same reasons for why less restrictive conditions would not avoid defendant's real and present threat as those supporting its finding that he posed such a threat. These included the nature and circumstances of the offenses, that defendant has a history of violent or assaultive behavior, the identity of the persons to whose safety he poses a threat and the nature of the threat, his statements, that he was on probation at the time of the offenses and has a history of violating court orders, that the incident involved harassment or abuse under the domestic violence statute and defendant has a history of domestic violence under that statute, and that he has been or is potentially a threat to other persons and may have mental health issues. Accordingly, the court's determination that less restrictive conditions would not avoid

defendant's real and present threat to Sandy and the community, specifically the police, was not unreasonable.

¶ 36                                    III. CONCLUSION

¶ 37    For the reasons stated, we affirm the judgment of the circuit court of De Kalb County.

¶ 38    Affirmed.

*People v. Horne*, **2023 IL App (2d) 230382**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of De Kalb County, No. 23-CF-485; the Hon. Philip G. Montgomery, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd and James Wozniak, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Patrick Delfino and David J. Robinson, of State's Attorneys Appellate Prosecutor's Office, of Springfield, for the People. |