No. 2-23-0570
Order filed March 4, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 23-CF-2627 |
| LUIS E. RODRIGUEZ, JR., | ) ) | Honorable Salvatore LoPiccolo, Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Presiding Justice McLaren and Justice Kennedy concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Trial court's detention order is affirmed, where defendant's admission to weapon possession and his criminal history satisfied the State's burden of establishing that he likely committed the charged detainable offenses, and where the court's findings concerning dangerousness and less-restrictive conditions were not unreasonable.

¶ 2    In this interlocutory appeal, defendant, Luis E. Rodriguez, Jr., requests that we vacate the trial court's December 6, 2023, order, granting the State's petition to detain him pursuant to Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act).[1]

---

[1]The Act is also commonly known as the Safety, Accountability, Fairness and Equity-

See also Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). For the following reasons, we affirm.

¶ 3                                       I. BACKGROUND

¶ 4      On December 6, 2023, defendant was charged with: armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2022)) (Class X); manufacture or delivery of more than one but less than 15 grams of cocaine (720 ILCS 570/401(c)(2) (West 2022)) (Class 1); two counts of being a felon in possession of or using a firearm when on parole (720 ILCS 5/24-1.1(a) (West 2022)) (Class 2); manufacture or delivery of more than 500 but less than 2000 grams of cannabis (720 ILCS 550/5(e) (West 2022)) (Class 2); two counts of unlawful use or possession of weapons or ammunition by convicted felon (720 ILCS 5/24-1.1(a) (West 2022)) (Class 3); possession of more than 500 but less than 2000 grams of cannabis (720 ILCS 550/4(e) (West 2022)) (Class 3); possession of a firearm with an invalid firearm owner's identification card or while ineligible (430 ILCS 65/2(a)(1) (West 2022)) (Class 3); and possession of a controlled substance, "other drug," any amount (720 ILCS 570/402(c) (West 2022)) (Class 4).

¶ 5      The State also filed a verified petition to detain defendant, arguing that defendant was charged with detainable offenses, defendant's pretrial release posed a threat to community safety, and no condition or combination of conditions could mitigate that threat. As additional grounds supporting detention, the petition noted that, in case No. 18-CF-1811, defendant was on mandatory supervised release (MSR) for being a felon in possession of a firearm, where he had been sentenced

_____

Today (SAFE-T) Act. Neither name is official, as neither appears in the Illinois Compiled Statutes or public acts.

to 10 years' imprisonment. In addition, he had served time for robbery and burglary (case Nos. 16-CF-424 and 13-CF-1109, respectively). Moreover, in 2016, defendant received three misdemeanor convictions for unlawful contact with street gang members while on parole.

¶ 6 On December 6, 2023, the trial court held a detention hearing, where the State noted that defendant had been charged with detainable offenses, and, further, it proffered defendant's criminal history, the charging documents, and two police synopses from the Aurora police department, one from the current case and one from defendant's 2018 conviction. The synopses were admitted into evidence. The State summarized the synopsis from the police report in this case as reflecting that, upon execution of a search warrant at a residence, police found in the basement where defendant stated he frequently resides, cocaine, cannabis, plastic baggies, a functioning scale, as well as .38-caliber revolver containing five live rounds. Defendant admitted the drugs were his, that he sells them, and "he said that he was in possession of the gun which belonged to somebody else but that his fingerprints and his DNA would be on that weapon."

¶ 7 The State noted that defendant was currently on MSR, is a convicted felon, and has a prior conviction for robbery. The State argued that defendant posed a real and present threat in that, as a convicted felon on MSR, he was in possession of a firearm that he was not permitted to have and that weapon contained five live rounds. Further, it noted that, since 2013, due to his criminal history, defendant has not been permitted to have a firearm. Yet, this was not the first time that defendant possessed a firearm when not permitted to do so, as his 2018 conviction (as summarized in the 2018 police synopsis) involved defendant fleeing a vehicle after a chase and discarding a 9-millimeter semiautomatic handgun that had one live round in the chamber and 13 additional bullets in the magazine. In addition, defendant was dealing drugs, and the State argued that there could

be no other reason for defendant to possess the weapon except to use it in furtherance of criminal activity and, presumably, to protect himself while dealing drugs, which puts others at risk.

¶ 8    According to the State,

"telling this defendant by putting a condition on him that he cannot have firearms would be useless at this point.   He has known that for the last [10] years that he can't possess firearms.   He ignored that fact in 2018.   He has ignored that fact again today here in December of 2023.   There is no way for the Court to ensure that he does not come in possession of other firearms[,] since this one he had and he wasn't supposed to."

Similarly, the State argued that electronic home monitoring (EHM) would not stop defendant from being present in the residence, having firearms, and selling drugs.

¶ 9    Defense counsel argued that defendant has resided in Kane County his entire life and, while he performed seasonal work, he was currently not working.   Defendant has a three-year-old stepchild that he lives with part-time and supports.   According to counsel, defendant could obtain rides to attend court or could attend electronically.

¶ 10    Further, counsel argued that the offense was detainable because of the firearm found in the basement, but defendant had indicated the gun belonged to somebody else.   Counsel noted that defendant was compliant with officers and told them that he frequently resides at the residence in the basement with his girlfriend, but that is not his full-time residence (and might not be the residence that is listed for parole purposes) and other people live there.   As such, counsel argued that the State did not establish constructive possession, where defendant was outside in a vehicle during the search, and the firearm was located in a basement bedroom, and the only evidence the court had was defendant's statement in the police synopsis related to the firearm.

¶ 11    Next, counsel argued the State had not established threat to the community, where the firearm was not found on defendant's person, was not used, there was no indication of violence or a threat of violence, and, even in the 2018 case, defendant disposed of the firearm and it was not used.    Counsel reiterated that, based on the information in the synopsis, the firearm belonged to someone else.    In addition, defendant had been on "parole" for around 18 months with no significant issues.

¶ 12    Finally, defense counsel argued that conditions existed that could mitigate any perceived harm to the community.    For example, an order that defendant not possess weapons, as well as an order that he not have contact with any persons at the searched residence, would be less-restrictive conditions that would allow defendant to remain out of custody and would limit any potential threat.    In addition, ordering random drug testing and no possession of controlled substances without a prescription could also limit the risk.    Finally, EHM would be significant, counsel argued, because defendant was out of work and, therefore, EHM would essentially serve as house arrest and, if he were to reside elsewhere or go to the searched address, GPS monitoring would issue an alert.

¶ 13    The court granted the State's petition, noting that, based on the verified petition, proffered evidence, testimony, and its consideration of the dangerousness factors established by section 110-6.1(g) (725 ILCS 5/110-6.1(g) (West 2022)), the State had established by clear and convincing evidence that the proof was evident and presumption great that defendant committed the detainable offenses.    Further, the court found clear and convincing evidence of dangerousness because defendant's statement to police established constructive possession of the firearm, in that he knew about it, exercised control over it, and was on MSR at the time of this offense.    Defendant's 2013 and 2016 convictions for burglary and robbery demonstrated a history of violent offenses, and he

was on MSR for unlawful possession of a firearm by a felon. "There's a reason why we do not want felons to have firearms." Further, the court found that there was potential subterfuge, in that defendant was apparently staying at an address different than the one listed for MSR and had a weapon there. "So certainly the fact that he takes steps to hide that from his parole officers also causes the Court to believe that he does present a real and present threat to the safety of the community. That firearm, not only can it be used in the idea of being a drug dealer for protection of his product and himself, but it also can serve as an intimidator as well." Finally, the court found by clear and convincing evidence that no condition or combination of conditions could mitigate the threat posed by defendant, because, since his 2013 conviction, defendant was not permitted to have a weapon, but that did not deter him from possessing one, even if for someone else, knowing he was not eligible to do so. He also did so while on MSR, so the court did not believe that defendant would follow a no-weapons condition. Moreover, the court noted, EHM and GPS do not prevent defendant from possessing firearms or drugs. The court entered a written order memorializing its findings.

¶ 14 On December 11, 2023, defendant filed a notice of appeal, using the form notice promulgated under Illinois Supreme Court Rule 606(d) (eff. Oct. 19, 2023). On January 24, 2024, defendant submitted a declination letter, notifying the court that he would not be submitting a Rule 604(h) memorandum. Ill. S. Ct. R. 604(h)(2) (eff. Dec. 7, 2023). On February 9, 2024, the State submitted its memorandum opposing defendant's appeal.

¶ 15                                    II. ANALYSIS

¶ 16 Defendant's notice of appeal requests relief in the form of "pretrial release to be granted." With respect to grounds for relief, defendant contends that the State failed to prove by clear and convincing evidence that: (1) he committed the charged offenses, where it did not prove possession

or constructive possession of the firearm; or (2) he poses a real and present threat to the safety of any person or the community, where he was compliant with police and neither the pending matter nor his prior conviction related to a firearm involved any threatening behavior. Defendant next checks the box on the notice of appeal reflecting his contention that the State failed to meet its burden of proving that less restrictive conditions would fail to protect any person or the community. He does not elaborate upon that contention. Finally, defendant argues that the court erred in its determination that "no condition or combination of conditions would reasonably ensure his appearance for later hearings or prevent him from being charged with a subsequent felony or class A misdemeanor," because "the court did not adequately weigh the effectiveness that no contact with persons at the residence in question and potential [EHM] would have to prevent any threat the court thought the defendant may be."

¶ 17    Pretrial release is governed by article 110 of the Code, as amended by the Act. 725 ILCS 5/110 (West 2022). Under the Code, pretrial release may be denied only in certain situations. *Id.* §§ 110-2(a), 110-6.1. As relevant here, upon filing a timely verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed a qualifying offense, that the defendant's pretrial release poses a real and present threat to the safety of any person or the community, and that less restrictive conditions would not avoid a real and present threat to the safety of any person or the community. *Id*. § 110-6.1(e), (f). If the trial court finds that the State proved a valid threat to the safety of any person or the community, the court must determine which pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." *Id*. § 110-5(a). If the trial court

determines that the defendant should be detained, the court must make written findings summarizing the reasons for detention, including why less restrictive conditions would not avoid a real and present threat to the safety of any person or the community, based on the specific articulable facts of the case. *Id*. § 110-6.1(h)(1).

¶ 18 We review under the manifest-weight-of-the-evidence standard the trial court's factual findings regarding whether the State presented clear and convincing evidence that defendant committed a detainable offense, presents a danger to any person or the community, and that no conditions short of detention would protect any person or the community from that threat. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. A decision is against the manifest weight of the evidence where the court's determination is unreasonable. *People v. Deleon*, 227 Ill. 2d 322, 332 (2008). We review for an abuse of discretion the trial court's ultimate determination regarding pretrial release. *Trottier*, 2023 IL App (2d) 230317, ¶ 13. An abuse of discretion also occurs when the trial court's determination is unreasonable. *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9.

¶ 19 As noted, defendant first challenges the court's finding that the State proved by clear and convincing evidence that the proof is evident or the presumption great that he committed the charged offenses, where it allegedly did not prove possession or constructive possession of the firearm. Clear and convincing evidence is " 'that quantum of proof that leaves no reasonable doubt in the mind of the fact finder about the truth of the proposition in question.' " *In re Tiffany W*., 2012 IL App (1st) 102492-B, ¶ 12. Clear and convincing evidence is "more than a preponderance of the evidence and not quite approaching the beyond-a-reasonable-doubt standard necessary to convict a person of a criminal offense." *People v. Craig*, 403 Ill. App. 3d 762, 768 (2010). Here, the court's finding that the State met its burden was not unreasonable. The 2023

police synopsis reflects that defendant was seated inside of a vehicle parked in the driveway of the residence that was the subject of a search warrant. He was detained without incident. A weapon was found in the basement bedroom. The synopsis reports that, "Post *Miranda*, [defendant] stated he frequently resides with his girlfriend in the basement where the drugs and gun were located. [Defendant] admitted the cannabis and cocaine located in the drawer were his and he sells cocaine and cannabis. [Defendant] advised he was possessing the gun for somebody else and his fingerprints and DNA would be on the gun." The synopsis, therefore, reflects that, regardless of where defendant was physically sitting when the weapon was found, he admitted to knowledge of and possession of the weapon. The admission is more than adequate to satisfy the clear and convincing standard, particularly where we have held that a police synopsis alone is sufficient to sustain the State's burden. *People v. Horne*, 2023 IL App (2d) 230382, ¶ 24.

¶ 20 Next, defendant challenges the trial court's determination that the State proved by clear and convincing evidence that he is a threat to the safety of any person or the community. 725 ILCS 5/110-6.1(e)(2) (West 2022). Defendant notes that he was compliant with police, and neither the pending matter nor the 2018 conviction involved any threatening behavior. Again, we disagree that the court's finding was unreasonable. The court expressly considered section 110-6.1(g)'s nonexclusive list of factors for assessing "dangerousness," *i.e.*, that the defendant poses a real and present threat to any person or the community. 725 ILCS 5/110-6.1(g) (West 2022). Section 110-6.1(g) provides that the court may consider evidence or testimony as to factors that include: (1) the nature and circumstances of any offense charged, including whether the offense is a crime of violence involving a weapon or a sex offense; (2) the history and characteristics of the defendant; (3) the identity of any person to whom the defendant is believed to pose a threat and the nature of the threat; (4) any statements made by or attributed to the

defendant, together with the circumstances surrounding the statements; (5) the age and physical condition of the defendant; (6) the age and physical condition of the victim or complaining witness; (7) whether the defendant is known to possess or have access to a weapon; (8) whether at the time of the current offense or any other offense, the defendant was on probation, parole, or supervised release from custody; and (9) any other factors including those listed in section 110-5 of the Code (725 ILCS 5/110-5 (West 2022)). *Id.* Here, with respect to his alleged dangerousness to the community, the court considered statements attributed to defendant, as well as the circumstances surrounding the statement, which established defendant had constructive possession of the firearm. The court noted defendant's 2013 burglary conviction and 2016 robbery conviction, which it found demonstrated a history of violent offenses. Moreover, the court noted that, when he allegedly committed the charged offenses, he was on MSR for unlawful possession of a firearm by a felon. "There's a reason why we do not want felons to have firearms." The court also found relevant the circumstances of potential subterfuge, in that defendant was apparently staying at an address different than the one listed for MSR and he had a weapon there, noting,

"[C]ertainly the fact that he takes steps to hide that from his parole officers also causes the Court to believe that he does present a real and present threat to the safety of the community. That firearm, not only can it be used in the idea of being a drug dealer for protection of his product and himself, but it also can serve as an intimidator as well."

Defendant's assertions that he complied with police and his prior firearm offense did not involve threatening behavior do not render unreasonable the court's findings on all the other factors. In sum, the court's finding the State met its burden of establishing dangerousness by clear and convincing evidence was not unreasonable.

¶ 21   Next, defendant checks the box contending that the State failed to prove that less restrictive conditions can mitigate the threat of safety to any person or the community.   He does not elaborate upon that issue.   The State, accordingly, argues that defendant has forfeited this argument.   We are mindful that, generally, forfeiture is a limitation on the parties, not the court (*People v. Holmes*, 2016 IL App (1st) 132357, ¶ 65), and we decline to apply forfeiture here, as defendant's arguments before the trial court can be characterized as having addressed the State's evidence regarding less-restrictive conditions.   However, we will not serve as defendant's advocate, have not been provided any additional argument or bases for reversing the court's findings rejecting defendant's argument below and, therefore, we simply evaluate the record and defer to the trial court, presuming that it knew the law and properly applied it.   *People v. Inman*, 2023 IL App (4th) 230864, ¶¶ 14-17.   Indeed, the court here expressly considered and rejected defendant's argument that a no-weapons order or EHM could mitigate defendant's threat to the community, because defendant was not deterred by prior restrictions on his ability to possess weapons, would not likely obey such conditions, and they would not prevent him from possessing firearms or drugs.   The court's finding was consistent with the factors set forth in section 110-5(a) (725 ILCS 5/110-5(a) (West 2022)) for assessing pretrial release conditions.   Accordingly, the court's finding that the State satisfied its burden concerning less-restrictive conditions was not against the manifest weight of the evidence or otherwise unreasonable.

¶ 22   Finally, defendant contends that the court erred in its determination that "no condition or combination of conditions would reasonably ensure his appearance for later hearings or prevent him from being charged with a subsequent felony or class A misdemeanor," because "the court did not adequately weigh the effectiveness that no contact with persons at the residence in question and potential [EHM] would have to prevent any threat the court thought the defendant may be."

We agree with the State that defendant's argument is misplaced here, because the language he relies upon implicates section 110-6(a) (725 ILCS 5/110-6(a) (West 2022)), which applies to defendants who have had conditions of pretrial release revoked or modified. Defendant had not, in this case, had conditions of pretrial release revoked or modified. In any event, to the extent that this argument implicates the court's alleged failure to adequately weigh the effectiveness of less-restrictive conditions, we reject this argument for the reasons stated above.

¶ 23                                    III. CONCLUSION

¶ 24    For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

¶ 25    Affirmed.