**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 240085-U

Order filed May 17, 2024

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-24-0085 Circuit No. 23-CF-2512 |
| PAUL H. RAMOS, | ) ) ) | Honorable Joshua J. Dieden & |
| Defendant-Appellant. | ) ) ) | Michael W. Reidy, Judge, Presiding. |

JUSTICE HOLDRIDGE delivered the judgment of the court.
Presiding Justice McDade and Justice Hettel concurred in the judgment.

**ORDER**

¶ 1  *Held*: The court did not err in detaining the defendant.

¶ 2  The defendant, Paul H. Ramos, appeals the detention order of the circuit court of Du Page County, arguing that the court erred in granting the State's petition.

¶ 3             I. BACKGROUND

¶ 4  On November 14, 2023, the defendant was charged with predatory criminal sexual assault of a child (Class X) (720 ILCS 5/11-1.40(a)(1) (West 2022)) and aggravated criminal sexual abuse

of a child (Class 2) (*id.* 11-1.60(c)(1)(i)). The defendant was subsequently indicted on two counts of predatory criminal sexual assault of a child and six counts of aggravated criminal sexual abuse of a child. The State filed a verified petition to deny pretrial release, alleging the defendant was charged with predatory criminal sexual assault and his release posed a real and present threat to the safety of any person, persons, or the community under section 110-6.1(a)(5) of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-6.1(a)(5) (West 2022)).

¶ 5         The factual basis provided that on July 14, 2023, the defendant was employed as a taekwondo instructor. K.M. was a student at the studio and was eight years old. K.M.'s father dropped her off at the studio for a class taught by the defendant. Toward the end of the class, K.M.'s father returned and sat on a couch in the waiting area. After class, K.M. went into the woman's changing room of the studio to remove her taekwondo uniform. The defendant initially entered the changing area, saw K.M., and left. A short time later, the defendant re-entered the changing room, approached K.M., and touched K.M.'s buttocks and vagina over her clothes. The defendant then ordered K.M. to remove her uniform pants, her shorts, and her underwear. K.M. eventually complied. The defendant grabbed K.M.'s buttocks with both hands and groaned. The defendant then touched K.M.'s vagina with his hand. The defendant then lowered his pants, exposing his penis. The defendant ordered K.M. to touch his penis, telling K.M. that it felt good as she touched it. The defendant pulled his pants back up and gestured for K.M. to keep the touching a secret before exiting the changing room. K.M. finished changing and walked out to where her father was waiting. K.M.'s father immediately noticed something was wrong with K.M. and asked her what happened. K.M. immediately disclosed to her father that the defendant touched her. Once home, K.M. disclosed that the defendant touched her buttocks and vagina to both of her parents, after which the police were notified. On July 18, 2023, K.M. was interviewed by an

2

investigator with the Children's Center and disclosed again that the defendant touched her buttocks and vagina. Shortly thereafter, the defendant moved out of state.

¶ 6    The petition alleged that the defendant was residing in South Carolina and "as such, conditions of pretrial release that would typically ensure the defendant's appearance in court and protect both the victim and society should the defendant be granted pretrial release would not be available to this Court." A pretrial risk assessment indicated that the defendant was a moderate risk. The defendant was unemployed and living in South Carolina. He did not have any criminal history.

¶ 7    A hearing was held on December 5, 2023.[1] The State provided the factual basis and stated,

"Typically conditions should pretrial release be granted, conditions including pretrial services, GPS monitoring, those are all conditions that could be imposed upon a resident of the State of Illinois. However, as the defendant has changed residences to South Carolina, unfortunately those conditions are not available to this Court.

Furthermore, I would like to note that while it's the People's understanding that the defendant is no longer employed as a marshal [*sic*] arts instructor, that is a profession that is not regulated by the Illinois Department of Financial and Professional Regulations. There is nothing licensing wise or regulations wise that would prevent the defendant from obtaining a similar job working with children while on bond in this case should he be released on pretrial release."

---

[1]While the transcripts from the hearing include the date of January 25, 2024, the parties agree that this is a typo and the hearing actually occurred on December 5, 2023.

Defense counsel indicated that the defendant was 28 years old, and his family was from the area until they moved to South Carolina. Counsel argued that there was nothing nefarious about the defendant's move; he, his parents, and siblings just relocated. Counsel did not believe that the proof was evident that the defendant committed the offense, as there had been no other allegations in the other two years the defendant had worked there and there were other people present on the day in question. Counsel indicated that the defendant could live with his aunt if granted release, and his parents would move back and buy a house.

¶ 8        After the hearing, the court granted the petition. In doing so, the court stated,

> "I do find that based upon the evidence that has been presented, the proof is evident or the presumption great that he has committed those qualifying offenses. I have considered the arguments of the attorneys. I have considered the proffers. I have also relied on the sworn petition filed by the State, and I find the State's version to be more credible at this point.
>
> I am basing this specifically on the facts of the disclosure of the minor child being immediate from when the events allegedly occurred. The minor child had a limited opportunity to fabricate these allegations by reporting it immediately. Moreover, the father of the child noticed something was wrong immediately with the child upon the crime occurring. Moreover, there was a consistent disclosure according to what the State has presented four days later by an 8 year old child in a forensic interview. There is no evidence that the Court has at this point that the child has a motive to fabricate these allegations at this point.
>
> So when I considered those factors as well as the State's sworn petition, I do find the proof evident or the presumption great that he has committed the

4

qualifying offenses at this point. I also find that the defendant poses a real and present threat to the safety of a person; that being the minor child with the initial [*sic*] K.M., as well as the community based on the specific articulable facts of the case. Those facts include the allegations that he touched the minor's buttocks and vagina, ordered her to remove her clothes, groaned as he grabbed her buttocks, touched her vagina with both of his hands and exposed his penis and ordered the minor child to touch.

The legislature has recognized conduct of this sort which is criminal is a threat to the safety by putting the sentencing parameters which include the predatory criminal sexual assault as being non-probationable, 6 to 60 years. But even if the legislature had not even put those sentencing parameters, I find that these allegations provide a real and present threat to the safety of that minor child as well as the community.

So the final factor the Court needs to consider is whether there is a condition or combination of conditions that can mitigate the real and present threat to the safety of that minor child as well as the community based on the specific articulable facts of case.

The Court notes the defendant has no criminal history. He does have strong family ties. I am not giving any weight to the risk assessment as it relates to his employment for the reasons [defense counsel] argued. But I have to contrast that with the factors for the dangerousness as well as the factors to consider for release. Among those are the nature and circumstances of the offensive. I've already highlighted the allegations in this which are clearly aggravating and provide a real

5

and present threat to the safety of that victim in the community. But also I am noting the defendant was an instructor to the minor child and in a position of trust, and the minor here is an 8 year old child. So based upon the nature and circumstances of the offense, I do not believe I can mitigate the real and present threat.

I am also looking at the nature and seriousness of the threat to the safety which is an additional factor. So when I contra[s]t those with the defendant's limited criminal history, I have no confidence that I could mitigate his access to children with something such as GPS or home detention or anything like that.

So I find that based upon the nature and circumstances of the offense as well as the nature and seriousness of the threat to the safety of the minor as well as the community, I cannot impose any conditions that would mitigate that threat."

¶ 9  On December 14, 2023, the defendant filed a "motion to vacate order of detention," and a hearing was held on December 18, 2023. The evidence presented was essentially the same, but the parties spent additional time discussing the potential conditions. The court went through all of the factors, providing a very detailed record, and continued to detain the defendant. In doing so, the court stated,

"What is being asked is that essentially that he has family members chaperone him and be responsible for him. I have no control over them. They're not parties to this case. I can't -- I mean, I don't even think I could issue a rule to show cause for any -- I have no jurisdiction over them whatsoever. So if they don't do what's being asked of them, I have no recourse other than potentially to put the defendant back in custody. But if he were to go and do something, there's nothing I can do to those

6

people that have, understandably so, put their reputations and lives on the line to say that they will abide by and take care of him. But I have no control of them."

The court further stated,

"That is a concern here, meaning if I say don't have contact with people under 18, even if I put him on GPS, how does that stop him? The GPS doesn't necessarily not prevent him from doing that. I guess it would show if he was in a location to a school, but it wouldn't show if he had contact with someone under 18. Even in the motion to vacate, it indicated that he wants to start another job with his brother. I don't know what that job is. It looks like he could be doing -- teaching taekwondo. That's a concern to the Court."

¶ 10    A psychosexual risk evaluation was conducted, which indicated that the defendant was at an average risk potential. Another detention hearing was held on January 22, 2024. As it related to the psychosexual evaluation, the court stated,

"The defendant received a score of average risk level. What's important to know on that is that that's on a scale ranging from very low risk, below average risk, average risk, above average risk, or well above average risk. So, I guess, if I'm looking at it logically, there's five different ranges or five different areas that he can fit into and he's, I guess, right in the heart of it, right in the middle, and that is whether he's an average risk for being charged or convicted of another sexual offense.

It goes on to elaborate or elucidate that, compared to other adult male sex offenders, his score of three placed him in the 65.7 percentile defined as a midpoint

average. This means that roughly 57.1 percent of offenders scored lower than him and that 25.7 percent scored higher than him."

The court continued,

> "And this is the doctor that has determined that he should be prohibited from being around any other minors without direct supervision from an approved chaperone or supervisor. This is a situation where this was not a family relationship; this was a business context where he was in a -- he was in a position where he was a coach or teacher – I'm sorry, not teacher -- an instructor to this alleged victim, and so there's that type of concern of any type of person that is alleged to have done that, that can do that in that type of situation, maybe has the possibility of doing that to another in another nonfamiliar type of situation."

The court found that continued detention was necessary.

¶ 11                                II. ANALYSIS

¶ 12        On appeal, the defendant argued that the court erred in detaining him. Specifically, he challenges the State's proof as to each of the three propositions. We consider factual findings for the manifest weight of the evidence, but the ultimate decision to grant or deny the State's petition to detain is considered for an abuse of discretion. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. Under either standard, we consider whether the court's determination is arbitrary or unreasonable. *Id.*; see also *People v. Horne*, 2023 IL App (2d) 230382, ¶ 19.

¶ 13        Everyone charged with an offense is eligible for pretrial release, which may only be denied in certain situations. 725 ILCS 5/110-2(a), 110-6.1 (West 2022). The State must file a verified petition requesting the denial of pretrial release. *Id.* § 110-6.1. The State then has the burden of proving by clear and convincing evidence (1) the proof is evident or presumption great that the

8

defendant committed a detainable offense, (2) the defendant poses a real and present threat to any person, persons, or the community or is a flight risk, and (3) no conditions could mitigate this threat or risk of flight. *Id.* § 110-6.1 (a), (e). Sections 110-5(a) and 110-6.1(g) set forth factors for the court to consider when determining dangerousness and any conditions. *Id.* §§ 110-5(a), 110-6.1(g).

¶ 14    Here, we cannot say that the court abused its discretion in detaining the defendant. First, the proof was evident that the defendant committed a detainable offense. The eight-year-old victim reported the incident immediately after it happened, and her father indicated that he could tell that something was wrong when she exited the changing room. The court noted that, at the time of the hearing, it found K.M.'s version of events more probable, where she did not have time to fabricate the acts, nor a motive to do so. While the defendant argues that the State presented no live witnesses or physical evidence, the statute specifically provides that the State "may present evidence at the hearing by way of proffer," (*id.* § 110-6.1(f)(2)) and the rules of evidence do not apply to the hearing (*id.* § 110-6.1(f)(5)).

¶ 15    Second, it was not against the manifest weight of the evidence for the court to find the defendant posed a real and present threat to the victim and the community. The defendant was in a position of power over K.M. and allegedly abused that power by sexually assaulting her. The court considered the factors set forth in section 110-6.1(g), including the nature and circumstances of the offenses, which were sex offenses with a minor victim. Moreover, the defendant was 28 years old and the victim was 8 years old, two factors the court could consider. Though the defendant argues there were more factors that weighed against detention, it is not the number of factors, but the weight the court gives to those factors that is determinative.

¶ 16    Lastly, it was not against the manifest weight of the evidence for the court to find there were no conditions to mitigate the defendant's dangerousness. The parties spent a significant amount of time discussing the potential conditions. The defendant had moved to South Carolina with his family shortly after the incident. While defense counsel indicated that his family would move back and he could live with his aunt, the court noted that it could not compel his family to do anything or require them to be responsible for him. Moreover, the GPS would not prevent the defendant from spending time with minors. Therefore, we cannot say that the court abused its discretion.

¶ 17                                III. CONCLUSION

¶ 18    The judgment of the circuit court of Du Page County is affirmed.

¶ 19    Affirmed.