**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 240211-U

Order filed July 1, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-24-0211 Circuit No. 23-CF-1301 |
| MICHAEL TRINKA, | ) ) ) | Honorable Carmen Goodman, |
| Defendant-Appellant. | ) | Judge Presiding |

_____

JUSTICE PETERSON delivered the judgment of the court.
Justice Hettel concurred in the judgment.
Presiding Justice McDade dissented.

_____

**ORDER**

¶ 1    *Held*:    The circuit court did not abuse its discretion in granting the State's petition to detain.

¶ 2    Defendant, Michael Trinka, was indicted on July 27, 2023, with 12 counts of aggravated driving under the influence (DUI) (Class 2 and Class 4) (625 ILCS 5/11-501(a)(1) (West 2022)) and two counts of reckless homicide (Class 3) (720 ILCS 5/9-3(a), (d)(2) (West 2022)). His bail was set at $3 million, but he remained in custody. On November 2, 2023, defendant filed a motion

seeking pretrial release. In response, the State filed a verified petition to deny pretrial release, alleging, *inter alia*, that defendant was charged with an enumerated offense and his release posed a real and present threat to the safety of any person, persons, or the community under section 110-6.1(a)(6) of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-6.1(a)(6) (West 2022)).

¶ 3     The factual basis provided that on June 27, 2023, at 9:48 p.m. Illinois State Police received a call regarding a Ford pickup truck traveling northbound in the southbound lanes of I-55. At approximately 9:50 p.m., officers responded to the report of a crash which occurred in the I-55 southbound lanes. The crash involved a Ford F-150 and a GMC Yukon. Witnesses at the scene indicated that the Ford had been traveling northbound in the southbound lanes of I-55 prior to the crash and struck the GMC head-on. Defendant was identified as the driver of the Ford. He was the only occupant of the vehicle and had to be extricated by the fire department. A blood test determined that he had a blood alcohol concentration of 0.266. There were five occupants in the GMC. The driver and front seat passenger were both pronounced dead at the scene. Three children were also in the vehicle and sustained serious injuries. Defendant had previously committed the offense of DUI.

¶ 4     An initial hearing was held on the petition on November 8, 2023. Defense counsel argued that defendant was hurt in the accident and could not be adequately treated while incarcerated. Counsel further indicated that revoking defendant's driving privileges would be a sufficient condition. The court asked, "how would we be able to monitor that he would not get behind the wheel of a car?" Counsel stated that other conditions could be used like GPS monitoring or home detention. The State provided that a cell phone extraction was done on defendant's cell phone from that night, within an hour of the crash, and stated, "From that night, the defendant was texting friends that he wanted to kill himself. He texted friends that he wanted to die; that he was going to

2

end it that night; and that he wanted to go out with a bang." The State said, "it isn't just driving" but,

> "The texts reveal that when the defendant is posed with adverse consequences and even though he wants to harm himself, he is willing to harm hundreds of motorists on I-55. Every single motorist he drove by that night, he posed a threat to them, and it didn't bother him one bit dangering [*sic*] the entire community."

Further, the State indicated,

> "There is nothing a GPS monitor, a SCRAM device is not going to stop this defendant to engage in the same type of conduct. Yes, was his weapon of choice that night a motor vehicle, but a GPS doesn't stop him from getting another weapon. A SCRAM device doesn't stop him from getting a different type of weapon. What happened that night wasn't just drinking alcohol. It was willing to harm everyone else on the roadway and ultimately killing two people and injuring three other individuals just for their own benefit."

¶ 5 The court granted the State's petition finding the State met its burden by clear and convincing evidence. In doing so, the court noted that it had listened to the arguments and reviewed the petition in determining that defendant posed a real and present threat to the safety of the community at large and no conditions could mitigate such a real and present threat.

¶ 6 Subsequent detention hearings were held on December 7, 2023, January 18, 2024, and March 11, 2024. After each hearing, the court found that continued detention was necessary.

¶ 7 On appeal, defendant contends that the court abused its discretion in granting the petition to detain. Specifically, he argues that he is not dangerous and that there were conditions to mitigate any dangerousness he posed. We consider factual findings for the manifest weight of the evidence,

3

but the ultimate decision to grant or deny the State's petition to detain is considered for an abuse of discretion. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. Under either standard, we consider whether the court's determination is arbitrary or unreasonable. *Id.*; see also *People v. Horne*, 2023 IL App (2d) 230382, ¶ 19.

¶ 8    Everyone charged with an offense is eligible for pretrial release, which may only be denied in certain situations. 725 ILCS 5/110-2(a), 110-6.1 (West 2022). The State must file a verified petition requesting the denial of pretrial release. *Id.* § 110-6.1. The State then has the burden of proving by clear and convincing evidence (1) the proof is evident or presumption great that defendant committed a detainable offense, (2) defendant poses a real and present threat to any person, persons, or the community or is a flight risk, and (3) no conditions could mitigate this threat or risk of flight. *Id.* § 110-6.1(e). When determining a defendant's dangerousness and the conditions of release, the statute includes a nonexhaustive list of factors the court can consider. *Id.* §§ 110-6.1(g), 110-5.

¶ 9    We find the court did not abuse its discretion in granting the petition. First, the evidence showed that the defendant was upset, had a blood alcohol concentration of more than three times the legal limit, drove the wrong direction on the road, and killed two individuals, injuring three more. The evidence presented indicated that defendant was a danger to the community. Second, we cannot say that it was against the manifest weight of the evidence for the court to find that there were no conditions to mitigate defendant's dangerousness. The State presented evidence as to the statutory factors, including the nature and circumstances of the offense, the weight of the evidence, and the history and character of the defendant (see *id.* § 110-5). It was not against the manifest weight of the evidence for the court to believe that no conditions could mitigate defendant's dangerousness. Therefore, the court did not abuse its discretion in granting the State's petition.

¶ 10	The judgment of the circuit court of Will County is affirmed.

¶ 11	Affirmed.

¶ 12	PRESIDING JUSTICE McDADE, dissenting:

¶ 13	I dissent from the majority's decision to affirm the circuit court's order granting the State's verified petition to deny pretrial release.

¶ 14	As the majority recites, section 110-6.1(e) of the Code of Criminal Procedure of 1963 states that "[a]ll defendants shall be presumed eligible for pretrial release. . . ." 725 ILCS 5/110-6.1(e) (West 2022). To rebut that presumption in this case, the State must prove the following three elements, by clear and convincing evidence: (1) that the proof is evident or the presumption great that the defendant has committed a detainable offense; (2) that the defendant poses a real and present threat to the safety of any person, persons, or the community; and (3) that no conditions can mitigate that threat. *Id.* The second and third elements expressly require that their proof be "based on the specific and articulable facts of the case." *Id.*

¶ 15	I agree with the majority's finding that the State satisfied the second of the above elements. Relevant to the third element, however, the State argued during the detention hearing that defendant's alleged conduct demonstrates that he is willing to harm both himself and others in response to experiencing adverse life events, and that neither a GPS monitor nor a SCRAM device is able to stop defendant from again engaging in this type of conduct. In support of this latter argument, the State injected extraneous conjecture that, although a vehicle was the specific weapon that defendant elected to use during the events giving rise to this case, there is nothing to foreclose the possibility of defendant choosing to use other weapons to harm others upon experiencing future adverse life events. In turn, defendant identified a prohibition against him driving, home confinement, or both, as potential mitigating conditions.

¶ 16          Although the State attempted to illustrate the ineffectiveness of a driving prohibition by pointing out that defendant could elect to use a weapon other than a vehicle in the future, the State did not so much as address the possibility of home confinement. Moreover, the circuit court itself acknowledged that home detention "could be a condition," and I see no evidence in the record to support a contrary finding.

¶ 17          There is also no evidence of record to support the State's assertion that defendant might employ weapons other than a vehicle to harm others in the future. During the detention hearing, the State identified only one prior offense by defendant, which was a DUI, and did not present facts regarding any past situations in which defendant harmed others using something other than a vehicle. Thus, the State's argument that defendant might use other weapons in the future was based on mere speculation. Accordingly, I find that the State failed to meet its burden of proof under the third statutory element, and would reverse the circuit court's judgment for an abuse of discretion.