2024 IL App (2d) 240079-U
No. 2-24-0079
Order filed April 23, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 23-CF-2476 |
| RICARDO NUNEZ, | ) ) ) | Honorable Salvatore LoPiccolo, Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Hutchinson and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court did not err in denying the defendant pretrial release.

¶ 2    The defendant, Ricardo Nunez, appeals from the trial court's order granting the State's petition to deny him pretrial release under article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), as amended by Public Act 101-652 (eff. Jan. 1, 2023). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of P.A. 101-652); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023).  We affirm.

¶ 3                                I. BACKGROUND

¶ 4     On November 15, 2023, the defendant was charged with four counts of aggravated domestic battery (720 ILCS 5/12-3.3(a-5) (West 2022)), a Class 2 felony. Two counts were based on an incident that occurred on November 10, 2023, and two counts were based on an incident that occurred on November 13, 2023. The allegations were that, on those two dates, the defendant strangled the victim, Mayra Gonzalez Perez, making physical contact and causing bodily harm.

¶ 5     After his arrest, the State filed a petition to detain the defendant. 725 ILCS 5/110-6.1 (West 2022). The State alleged that there was probable cause to show that the defendant committed the alleged offenses and that his pretrial release posed a real and present threat to the safety of any person or persons or the community. Finally, as additional grounds to deny pretrial release, the State noted that the defendant had an extensive criminal history, dating back to 1992, including convictions for aggravated criminal sexual abuse, failure to register as a sex offender, robbery, battery, residential burglary, retail theft, and resisting a peace officer.

¶ 6     At the hearing on the State's petition, the State tendered the charging document, the defendant's criminal history, and the police synopsis. The synopsis related as follows. On November 14, 2023, the victim went to the police station to report a past domestic battery. The victim stated that in May 2023 she started renting an upstairs room in the defendant's mother's house. At the time, the defendant was living in the basement of the home. On November 10, 2023, at about 3 p.m., the defendant entered the victim's room. The victim told him that she did not want to date him because he kisses her and has sex with her without her consent. The defendant then grabbed the victim's throat with his right hand and squeezed while lifting her up. The victim stated that she was unable to breath or speak when he held her throat.

¶ 7    The victim further stated that, because of previous incidents when the defendant choked her or had nonconsensual sex with her, she had her cell phone in the corner of the room and recording during the November 10 incident. The officer stated in the synopsis that he viewed what was recorded on the victim's cell phone from that day. The officer saw that the victim was placing something in her drawer when the defendant grabbed her by the throat, stood her upright, and was lifting her. The victim was on her toes but her feet never fully came off the floor. The video had no audio and stopped while the defendant was still holding her by the throat.

¶ 8    The victim also told the officer that, on November 13, 2023, at about 4 p.m., she was laying in her bed when the defendant entered her room. He grabbed her by the neck and lifted her to a standing position. She was not able to breathe or speak. After the defendant put her down, he said he needed to leave but he was coming back and that he would kill her if she left the residence.

¶ 9    In the synopsis, the officer noted that the victim had a bruise the shape of a thumb pad on the left side of her neck. The victim believed the bruise was from the incident on November 10. The victim also had bloodshot eyes, but the officer noted that this could have been due to her being upset during the interview. The officer spoke with an assistant State's attorney, who approved four charges of aggravated domestic battery.

¶ 10    At the hearing, the State also explained that the victim made the report on November 14, 2023, because the defendant called her and was upset that she was not at the residence. She told him she was at work. He stated that he would shoot any vehicle he saw if he believed it was the victim with another man. He also told her that he was planning to damage her room. When she returned home from work that evening, everything in her room was thrown around and the room was disheveled. That's when the victim went to the police station to make her report. The victim

also alleged that the defendant forced himself on her in June 2023. The State was still investigating that allegation.

¶ 11    The State then addressed the defendant's criminal history. The defendant had two juvenile cases, one for battery and one for residential burglary, and was adjudicated delinquent in both cases. While his juvenile case for residential burglary was pending, the defendant committed aggravated criminal sexual abuse and was sentenced to three years in the department of corrections. The defendant was also convicted of possession of cannabis while on juvenile probation. The defendant had adult convictions for failure to register as a sex offender, possession of a stolen motor vehicle, and robbery. The defendant had misdemeanor convictions for unlawful possession of cannabis and drug paraphernalia, resisting a peace officer, battery, criminal damage to property, and retail theft. As to the conviction for aggravated criminal sexual abuse, the State noted that the defendant was 19 years old at the time and the victim, who became pregnant as a result of the offense, was 13 years old. The State also noted that the circumstances of the charge for possession of a stolen motor vehicle showed that the defendant had struck someone with a broomstick and caused damage to two other vehicles. Finally, the State noted that the defendant was a Sureños 13 gang member.

¶ 12    Based on the foregoing, the State argued that it provided clear and convincing evidence that the defendant committed detainable offenses and that he posed a real and present threat to the physical safety of specific identifiable person or persons or the community as a whole. The State noted that the victim had moved out of the defendant's mother's house and had obtained an order of protection but she still lived in the area and was afraid. The State argued that the defendant's criminal history showed that he does not care about rules, that he reacts with violence to many

situations, and that, therefore, electronic home monitoring would not mitigate the threat he posed to others.

¶ 13    In response, the defendant argued that he lived with his mother and had lived in Kane County for 15 years.  He was currently working and had five children to financially support.  The defendant acknowledged that he had a relationship with the victim but denied her allegations of aggravated domestic battery.  The defendant noted that there were no photos, medical records, or disfigurement, and the victim did not appear at the hearing.  The defendant also argued that there was no evidence that the victim feared him.  The defendant asserted that the State had not proved he committed a detainable offense and that the State failed to prove that less restrictive conditions, such as a no contact order, could not mitigate any alleged threat.

¶ 14    Following argument, the trial court granted the State's petition to detain the defendant.  The trial court noted that it considered the factors in determining dangerousness set forth in section 6.1(g) of the Code (725 ILCS 5/110-6.1 (g) (West 2022)).  The trial court found that the victim's statements were corroborated by the officer's observations of the video from the victim's cell phone.  The trial court also noted, that on the day the victim made her report to the police, the defendant had threatened to kill her and ransacked her room.  The defendant also threatened to kill the victim during the incident on November 13.  The trial court found that the State had proved by clear and convincing evidence that the defendant committed the charged offenses and that he posed a real and present threat to the safety of the victim.

¶ 15    Finally, the trial court found that there were no conditions that could mitigate the threat posed by the defendant. The trial court noted that the defendant had a criminal history of violence, that his 2018 conviction for robbery was a forcible felony and that the defendant had convictions for residential burglary, battery, and resisting a peace officer.  Some of the defendant's felony

offenses were committed while he was on juvenile probation. Further, the trial court noted that the defendant choked the victim twice until she could not breathe. The trial court did not believe that electronic home monitoring (EHM) or just an order of protection could assure the victim's safety. The trial court noted the EHM and GPS still allowed the defendant to leave his residence to go to work and to go shopping. The trial court stated that the defendant's history of committing offenses while on juvenile probation, and the fact that the victim had informed the defendant that she did not want to have a relationship with him but he did not stop contacting her, showed that the defendant would not abide by conditions of release. A written order that included all the trial court's findings was entered the same day.

¶ 16    The defendant filed a timely form notice of appeal and elected not to file a memorandum under Illinois Supreme Court Rule 604(h)(2) (eff. Dec. 7, 2023) (providing that the appellant "may file, but is not required to file, a memorandum"). The State filed a response in opposition to the defendant's appeal.

¶ 17                                        II. ANALYSIS

¶ 18    In his form notice of appeal, the defendant raises the following arguments. First, the defendant argues that the State failed to prove by clear and convincing evidence that the proof was evident or the presumption great that he committed the charged offenses. The defendant stated that there were no witnesses, photographs, or medical records to support the allegations. Further, there was a time lapse between the alleged incidents and the time of the victim's report to the police.

¶ 19    Second, the defendant argues that the State failed to meet its burden of proving by clear and convincing evidence that defendant poses a real and present threat to the safety of any person or persons or the community based on the specific and articulable facts of the case. The defendant

- 6 -

stated that the victim had moved out of his mother's house and there was no evidence that the victim feared for her safety. The defendant also asserted that there was no evidence that the community's safety was threatened.

¶ 20 Finally, the defendant argues that the State failed to meet its burden of proving that no condition or combination of conditions could mitigate the real and present threat to the victim or the community. In support, the defendant argued that any fear experienced by the complaining witness could be mitigated by a no contact order and the State failed to explain why that condition would not be sufficient.

¶ 21 In Illinois, all persons charged with an offense are eligible for pretrial release. 725 ILCS 5/110-2(a), 110-6.1(e) (West 2022). Pretrial release is governed by article 110 of the Code as amended by the Act. *Id.* § 110-1 *et seq*. Under the Code, as amended by the Act, a defendant's pretrial release may only be denied in certain statutorily limited situations. *Id.* §§ 110-2(a), 110-6.1(e).

¶ 22 Upon filing a verified petition requesting denial of pretrial release, the State has the burden to prove, by clear and convincing evidence, that (1) the proof is evident or the presumption great that the defendant has committed a qualifying offense (*id.* § 110-6.1(e)(1)), (2) the defendant's pretrial release would pose a real and present threat to the safety of any person or persons or the community (*id.* § 110-6.1(e)(2)), and (3) no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community or prevent the defendant's willful flight from prosecution (*id.* § 110-6.1(e)(3)). "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question ***." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74.

¶ 23    We review the court's decision to deny pretrial release under a bifurcated standard. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13.  Specifically, we review under the manifest-weight-of-the-evidence standard the court's factual findings as to dangerousness, flight risk, and whether conditions of release could mitigate those risks.  *Id.*  A finding is against the manifest weight of the evidence only where it is unreasonable or not based on the evidence presented.  *Id.*  We review for an abuse of discretion the trial court's ultimate determination regarding pretrial release.  *Id.*  An abuse of discretion also occurs only when the trial court's determination is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court.  *Id.*

¶ 24    The defendant first argues that the State failed to prove by clear and convincing evidence that the proof is evident or the presumption great that he committed the charged offenses.  The defendant was charged with aggravated domestic battery.  A person commits aggravated domestic battery when, while committing a domestic battery, he strangles another person.  720 ILCS 5/12-3.3(a-5) (West 2022).  A person commits domestic battery when he causes bodily harm to a household member or makes physical contact of an insulting or provoking nature with a household member.  *Id.* § 3.2.  Here, the police synopsis was sufficient to establish by clear and convincing evidence that the defendant committed the charged detainable offenses.  The victim's statement indicated that she lived in the same household as the defendant.  Further, on two occasions, the defendant entered her bedroom and strangled her to the point that she could not breathe or speak.  The police officer saw a video of one of the incidents, which corroborated the victim's statement.  The officer also observed bruising on the victim's neck.  As a police synopsis alone may suffice to meet the State's burden (see, *e.g.*, *People v. Horne*, 2023 IL App (2d) 230382, ¶ 14), the trial court's determination that the State met its burden of proof was not contrary to the manifest weight of the evidence.

¶ 25    In so ruling, we note that the defendant argues that the evidence was insufficient because there were no other witnesses, no photographs of the bruising on the victim's neck, and there was a time delay between the incidents and the report to police.  However, such arguments are better suited for trial.  We note that the evidence required at a detention hearing is less than required at trial.  *People v. Luna*, 2024 IL App (2d) 230568, ¶ 9.

¶ 26    The defendant next argues that the State failed to show, by clear and convincing evidence, that he poses a real and present threat to the safety of any person or persons or the community. The defendant argues that the victim moved out of his mother's home and there was no evidence that she feared for her safety.  This contention is without merit.  The trial court found that the defendant posed a threat to the victim.  Despite the defendant's contention, there was evidence that the victim feared for her safety.  The State informed the trial court that the victim had procured an order of protection, still lived in the same area, and she said she was afraid.  The police synopsis indicated that, in addition to strangling her, the defendant had previously forced her to have sex with him.  On November 13, he threatened to kill her if she left the residence.  Further, the record showed that the victim was prompted to make her police report when the defendant called her and threatened to kill her if he saw her with another man and then, later that day, ransacked her room. The defendant also had a history of crimes involving violence, such as his convictions for battery, resisting a peace officer, and unlawful possession of a stolen motor vehicle (where the defendant attacked someone with a broom).  In sum, the court's finding that the State met its burden to establish by clear and convincing evidence that defendant presents a real and present threat of danger to the victim was not unreasonable.

¶ 27    Finally, the defendant argues that the State failed to prove by clear and convincing evidence that no condition or combination of conditions could mitigate the threat he posed to the victim.

Where the trial court finds that the State proved a valid threat to the safety of any person or the community, the court must determine which pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." 725 ILCS 5/110-5(a)(1)-(6) (West 2022). In reaching its determination, the trial court must consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the seriousness of the threat the defendant poses to any person or the community. *Id.* In addition, when a defendant is charged with aggravated domestic battery, the trial court can consider additional factors, such as: whether the alleged incident involved harassment or abuse as defined in the domestic violence statute; whether the defendant has a history of domestic violence or a history of other criminal acts; whether the defendant has been or is potentially a threat to any other person; the severity of the alleged incident; whether a separation from the victim of abuse or a termination of the relationship between them has recently occurred or is pending; whether the defendant has exhibited obsessive or controlling behaviors toward the victim; and any other factors the court deems have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of that behavior. *Id.* § 110-5(a)(6).

¶ 28    In determining that no conditions of release could mitigate the threat the defendant posed to the victim, the trial court found that an order of protection or no contact order could not ensure the safety of the victim. The trial court also noted that EHM and GPS could not protect the victim because such monitoring still allowed the defendant to travel to and from work and to go shopping. The trial court also considered that the defendant had a history of not complying with conditions of probation and that he continued to abuse the victim even after she told him she did not want a

relationship with him. The record also indicated that the defendant threatened to kill the victim on November 13 and that, on November 14, the victim was prompted to go to the police station after the defendant again threatened to kill her and ransacked her room. Based on the foregoing, the trial court's finding that no conditions could mitigate the threat posed by the defendant's release was not against the manifest weight of the evidence.

¶ 29                                        III. CONCLUSION

¶ 30    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 31    Affirmed.