2024 IL App (2d) 240389-U
No. 2-24-0389
Order filed September 23, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No.   23-CF-2343 |
| JASON J. WESTON, | ) ) | Honorable David P. Kliment, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Presiding Justice McLaren and Justice Kennedy concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Trial court's detention decision was not an abuse of discretion, where defendant has a history of battering the same victim and he was on probation when he committed the alleged offenses.   Affirmed.

¶ 2    Defendant, Jason J. Weston, timely appeals from the denial of his pretrial release under section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2022)).   For the following reasons, we affirm.

¶ 3                              I. BACKGROUND

¶ 4 On November 1, 2023, defendant was charged with four counts of domestic battery (720 ILCS 5/12-3.2(a)(1), (2) (West 2022)) (two Class 4 felonies and two Class A misdemeanors) for allegedly kicking his girlfriend, Alicia Bryson, in the face.

¶ 5 Seven months later, on June 4, 2024, the State petitioned to deny defendant pretrial release, alleging that he was charged with detainable offenses and his pretrial release posed a real and present threat to Bryson's safety. 725 ILCS 5/110-6.1(a)(4) (West 2022). The petition further noted that defendant was on probation for domestic battery, also committed against Bryson, in case Nos. 23-CF-24 and 22-DV-669. In addition, defendant had prior convictions for driving while license suspended, driving under the influence, unlawful possession of a controlled substance (for which he served two years' imprisonment), and reckless conduct.

¶ 6 That same day, at the hearing on the State's petition, the State explained to the court that on October 1, 2022, defendant was arrested and charged in case No. 22-DV-669 with domestic battery. He was ordered to have no contact with Bryson and to stay away from her Elgin address. He was released with conditions but was quickly charged with a bond violation because he had contact with Bryson. Thus, on October 3, 2022, defendant again appeared at the bond call and was ordered to have no contact with Bryson. At both hearings, defendant was ordered not to commit new criminal offenses. According to pretrial services, as of December 6, 2022, defendant made no efforts to contact them, and he was arrested in November 2022 for driving with a suspended license. Then, on January 4, 2023, while out on bond, he was arrested and charged in case No. 23-CF-24 with domestic battery, again involving Bryson. On March 9, 2023, defendant pleaded guilty to domestic battery in case Nos. 22-DV-669 and 23-CF-24, and he was placed on 18 months' probation, the conditions of which included that he not commit further crimes and have no abusive contact with Bryson.

¶ 7    The State continued that the evidence reflected that, on November 1, 2023, police responded to a call of domestic battery in Elgin and met with Bryson, who had a visibly split lower lip that was bleeding and later required stitches.    According to the police synopsis, People's exhibit No. 1, Bryson was uncooperative at the scene and stated that she only wanted to go to the hospital.    However, on her way to the ambulance, she stated to the paramedics and officers that "he kicked me in the face," and, at the hospital, she reported that defendant had argued with her, "snapped," threw her down to the ground by her braids, and kicked her in the face.    Defendant's whereabouts at the time were unknown.

¶ 8    The State argued that defendant posed a real and present threat to Bryson, given that there existed three documented incidents whereby Bryson was battered at defendant's hands.    The State also presented People's exhibit Nos. 2 and 3, the synopses from the October 2022, and January 2023, incidents, which reflected that defendant struck Bryson in the mouth with a closed fist, causing her mouth to bleed, and where he grabbed her by the neck and strangled her, with officers observing bruising and abrasions on her neck, a scratch on her cheek, two broken fingernails on her right hand, and one broken fingernail on her left hand.    After the January 2023 incident, the State noted, defendant fled on foot.    The State argued that, because defendant continued to harm Bryson over an extended period, despite court orders that he not have abusive contact with her or commit other criminal offenses, defendant posed a real and present threat of harm to her and no conditions would mitigate that threat, as defendant had demonstrated he cannot follow court orders.    The State also noted that, given Bryson's apparent initial reluctance to cooperate with police, it appears she feared defendant.    "If the court tells him to stay away, he's not going to stay away because he has never done that in the past."

¶ 9    Defense counsel noted that defendant was full-time employed with a temp agency, financially supported an 18-year-old son, and had complied with the court-ordered domestic-violence classes related to the two domestic-violence cases for which he was on probation. Further, counsel argued that the police synopsis in this case was very brief, and it reflected that Bryson was not cooperative with the police, wanting only medical attention.    Defendant's whereabouts at the time were unknown, and he was not present at the residence when Bryson spoke to police, and, so, counsel argued, her reluctance to cooperate suggested that something else happened and she played a greater role in the situation than she disclosed.    In addition, counsel argued that defendant was not a *present* threat to Bryson, where the alleged incident occurred seven months earlier and there was no evidence presented of other incidents or charges in the interim. Finally, counsel argued that conditions such as electronic home monitoring (EHM) could mitigate any risk of potential threat, although counsel acknowledged that defendant resided in Cook County and Kane County did not facilitate EHM in Cook County.    Nevertheless, counsel also argued that a no-contact order would suffice, since there was one already in effect and there had been no evidence of contact in seven months.

¶ 10    In rebuttal, the State noted that (1) the first domestic battery occurred in October 2022, defendant was released, then (2) the next domestic battery occurred a few months later, in January 2023, and (3) the present incident happened 10 to 11 months after that, in November 2023. Therefore, the State argued, the fact that seven months had allegedly passed without incident did not reflect defendant was not a present threat to Bryson, as "he previously went 10 months without putting his hands on her.    And so, clearly, seven months is certainly not enough time to demonstrate that he is not going to lay hands on her again." Finally, the State noted that, while defendant had supposedly completed domestic-violence counseling, he had not been coming to

court, and had not been in contact with probation, and there was an outstanding warrant from February 8, 2024, on the cases for which he was on probation.

¶ 11    The court (Judge Salvatore LoPiccolo) granted the State's petition.    The court noted that it had considered the factors for determining dangerousness as set forth in section 110-6.1(g) of the Code (725 ILCS 5/110-6.1(g) (West 2022)), as well as the petition and evidence presented, and found, in part based on the three police synopses, that the State had proved by clear and convincing evidence that the proof was evident and presumption great that defendant committed domestic battery. The court also found that the State satisfied its burden of establishing that defendant posed a real and present threat to Bryson, as the evidence reflected that he battered Bryson three times in a 13-month period, in violation of his bond and probation conditions.    The court found that defendant had been ordered to not commit new offenses and, further, to have no abusive conduct with Bryson.    "Kicking somebody in the mouth is abusive conduct."    In addition, defendant demonstrated that he did not follow probation conditions by not attending appointments.    The court noted that defendant was not arrested at the time of the November 2023 event, and, so, the passage of time did not mean he was any less of a threat to her, especially given, again, that he battered her three times in 13 months.    Finally, the court found that the State met its burden of establishing that no conditions of pretrial release could mitigate the real and present threat defendant posed, given defendant's past performance, picking up two new cases and not reporting to pretrial services while on bond, as well as not following the conditions of probation. The court noted that EHM was not available for defendant, as he lived in Cook County and Kane County does not monitor EHM there.

"However, even if EHM and GPS was available here, they will not ensure the safety of Alicia Bryson against this defendant.

They may be able to show where he's at at all times, but that doesn't prevent him from committing additional offenses, even while having a bracelet on.

And based on his three times in 13 months battering her, those odds are not ones that I wish to take."

¶ 12　On June 6, 2024, defendant filed a motion for relief, asking the court to reconsider his detention and arguing that the court erred in granting the State's petition.　First, defendant argued that the State failed to satisfy its burden to prove by clear and convincing evidence that he committed the charged offenses because the police relied almost exclusively on Bryson's statements provided to medical personnel, as she was uncooperative with police.　As defendant was not present at the residence when officers arrived, defendant argued that Bryson's reluctance to speak with police was likely indicative of her "involvement in the alleged offense and her fear of being arrested herself."　Second, defendant argued that State failed to meet its burden to establish that he posed a real and present threat to Bryson's safety, when seven months had passed between the date of the incident and the detention hearing, with no evidence presented that "defendant has had any contact whatsoever" with Bryson during that period.　"Even if it was established that the defendant was a threat to [Bryson] at some point, it cannot be argued that the defendant is a *present* threat to [her]."　(Emphasis in original.)　Finally, defendant argued that the State failed to meet its burden of proving that no condition or combination of conditions could mitigate the real and present threat of safety because, although the State argued, and the court found, that a no-contact order would be ineffective based on defendant's past performance while out on bond and his failure to abide by probation conditions, defendant had proved over seven months that he could abide by court orders and comply with the law.　Specifically, he had completed court-ordered domestic-violence counseling and "has had non-abusive contact with the

complaining witness." At oral argument on the motion for relief, defense counsel noted that defendant lived in Chicago, a distance from Elgin, and, moreover, that his recollection was that previous orders had required defendant to have "non-abusive contact" with Bryson, such that "at this point[,] to step up to no contact with the addresses that they have and the distance that those are apart are certainly conditions that would [mitigate] a potential risk[.]" Counsel elaborated that the "non-abusive contact order, which would allow contact in general, certainly would allow her [*sic*] situation that could ultimately turn into an argument or get out of hand. *The court by ordering no contact ultimately would not put [defendant] in that situation*." (Emphasis added.)

¶ 13 On June 28, 2024, the court (Judge David P. Kliment) rejected defendant's arguments, noting that it did not believe the court had put defendant in any position and, rather, defendant put himself in a position. The court noted that, in March 2023, defendant pleaded guilty to battering Bryson in both October 2022 and January 2023. Yet, after pleading guilty in March, he was then charged with battering her again in November. The court reviewed the three police synopses, Judge LoPiccolo's prior order, the charges, and the public safety assessment, which placed defendant as a four out of six to re-offend and three out of six to not appear. Clarifying that it was not considering the risk of non-appearance, the court found that "this defendant absolutely poses a real and immediate threat" to Bryson, and his detention was required to protect her because there were no other reasonable less-restrictive means to accomplish that purpose.

¶ 14 On July 2, 2024, defendant filed a notice of appeal. The Office of the State Appellate Defender declined to file a memorandum pursuant to Illinois Supreme Court Rule 604(h)(7) (eff. Apr. 15, 2024). The State has submitted a memorandum opposing defendant's appeal.

¶ 15                                     II. ANALYSIS

¶ 16    Pretrial release is governed by article 110 of the Code.    725 ILCS 5/110 (West 2022). Under the Code, as amended, all persons charged with an offense are eligible for pretrial release, and a defendant's pretrial release may only be denied in certain statutorily limited situations.    *Id.* §§ 110-2(a), 110-6.1(e).    As relevant here, upon filing a verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed a detainable offense (*id.* § 110-6.1(e)(1)), that the defendant's pretrial release poses a real and present threat to the safety of any person or the community (*id.* § 110-6.1(e)(2)), and that no condition or combination of conditions can mitigate that risk (*id.* § 110-6.1(e)(3)).    "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question."    *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74.

¶ 17    We review defendant's arguments under a bifurcated standard of review: the court's factual determinations are reviewed to determine whether they are against the manifest weight of the evidence, and the court's ultimate determination regarding denial of pretrial release is reviewed for an abuse of discretion.    *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13.    An abuse of discretion occurs when the court's decision is unreasonable.    *Id.*    Likewise, a decision is against the manifest weight of the evidence where the court's determination is unreasonable.    *Id*.

¶ 18    Defendant's challenges to the court's decision, as reflected in his motion for relief to the trial court, fail, as none reflect the court's findings were contrary to the manifest weight of the evidence or that it abused its discretion.    First, defendant argues that the State failed to meet its burden of proving that he committed the charged offenses.    We disagree.    The sworn police synopsis reflected that defendant grabbed Bryson's hair, threw her to the ground, and kicked her in the face, requiring stitches.    We have repeatedly held that a police synopsis constitutes

information upon which the State may rely in making its proffer and, further, that a synopsis alone may suffice to sustain the State's burden. See, *e.g.*, 725 ILCS 5/110-6.1(f)(2) (West 2022); *People v. Horne*, 2023 IL App (2d) 230382, ¶ 24. Defendant's accusation that Bryson's reluctance to speak to police reflects a fear that she would herself be arrested is speculative and, at most, implies that the court erred in giving weight to the synopsis. However, "we will not substitute our own judgment for the trier of fact on issues regarding the weight of the evidence or the credibility of witnesses." *People v. Vega*, 2018 IL App (1st) 160619, ¶ 44; see also *People v. Inman*, 2023 IL App (4th) 230864, ¶ 11 (applying *Vega* in a pretrial-release context). In sum, given the police synopsis and the State's proffer, the court's finding that the State met its burden by clear and convincing evidence of demonstrating that the proof was evident and presumption great that defendant committed the charged offenses was not contrary to the manifest weight of the evidence.

¶ 19    Next, defendant argues that the State failed to meet its burden to establish that he poses a real and present threat to Bryson because seven months had passed between the alleged incident and the detention hearing without any proof of contact or further charges.[1] We disagree. The court soundly rejected this argument below, as there was ample evidence to support its dangerousness finding in accordance with the factors listed in section 110-6.1(g) of the Code. Defendant has a criminal history reflecting, as the State puts it, "an apparent proclivity for beating"

---

[1]We note that, while defendant argues that there was no proof he contacted Bryson in the seven months following the alleged domestic battery, he also argues, in support of his argument that he can comply with conditions, that he *has* managed to have contact with Bryson during that period without further incident.

Bryson, even with multiple months passing between incidents. As the court found, defendant has allegedly battered Bryson for the third time in 13 months. In addition, defendant's willingness to commit violent acts against Bryson, even while on probation and after a period of months, suggests a propensity for violent, abusive, and assaultive behavior that is difficult to curb, such that the court's finding that he remained a present risk to her was supported by the evidence.

¶ 20    Finally, defendant argues that the State failed to meet its burden of proving that no condition or combination of conditions could mitigate against any threat he posed to Bryson. Defendant suggested below that a blanket "no contact" order would be more effective than the prior "no abusive contact" orders he previously received and violated. Frankly, this argument is nonsense. The record reflects that, after striking Bryson in the mouth with a closed fist, causing her mouth to bleed (October 2022), and while under court order to not abuse her, defendant: (1) grabbed her by the neck and strangled her, with officers observing bruising and abrasions on her neck, a scratch on her cheek, two broken fingernails on her right hand, and one broken fingernail on her left (January 2023); and (2) threw her to the ground by her hair and kicked her in the face requiring stitches (November 2023). The notion that, if defendant is ordered more broadly to have no contact with Bryson, he would not be "put in a situation" to abuse her, as though it was the wording of the court's order that facilitated his past criminal actions, was properly flatly rejected by the trial court. In addition, the record reflects that defendant committed the November 2023 acts while on probation and after he had been ordered to commit no further criminal acts. Finally, the court learned that defendant had failed to report to pretrial services as required, and that a failure-to-appear warrant had issued in February 2023. Thus, the court's finding that defendant has demonstrated an inability to comply with court orders and, thus, there exists no less-

restrictive conditions that could mitigate the danger he poses to Bryson, was not against the manifest weight of the evidence.

¶ 21    In sum, the court did not abuse its discretion in granting the State's petition to deny defendant pretrial release.

¶ 22                          III. CONCLUSION

¶ 23    For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

¶ 24    Affirmed.