2025 IL App (2d) 240656-U
No. 2-24-0656
Order filed January 15, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 24-CF-2094 |
| | ) ) | Honorable |
| NERY E. MORALES, | ) ) | Salvatore LoPiccolo, Jr., and Donald M. Tegeler, Jr., |
| Defendant-Appellant. | ) | Judges, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Presiding Justice Kennedy and Justice Hutchinson concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court did not err in ordering defendant's pretrial detention where the State proved that defendant committed the charged offenses, posed a real and present danger to the victim, and no conditions of release could mitigate that risk.

¶ 2    Defendant, Nery Morales, appeals from the trial court's order denying his pretrial release under article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), as amended by Public Act 101-652 (eff. Jan. 1, 2023). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of P.A. 101-652); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     On September 23, 2024, defendant was charged with aggravated domestic battery-strangulation (720 ILCS 5/12-3.3(a-5) (West 2022)) (class 2 felony), domestic battery-bodily harm (*id.* § 12-3.2(a)(1)) (class A misdemeanor), and domestic battery-physical contact (*id.* § 12-3.2(a)(2)) (class A misdemeanor) following a dispute with his girlfriend M.L.

¶ 5     That same day, the State filed a verified petition to deny defendant pretrial release (*id.* § 110-6.1) and the trial court held a pretrial detention hearing.  At the hearing, the State proffered defendant's extensive criminal history: felony convictions for domestic battery (McHenry County, 2020), driving with license suspended (Kane County, 2015), aggravated unlawful use of weapon (Cook County, 2001), and retail theft (Cook County, 2001); seven misdemeanor convictions for driving with his license suspended (Kane County, 2020, 2013, 2010, and 2007; McHenry County, 2007; Cook County, 2006 (twice)); and misdemeanor convictions for domestic battery (McHenry County, 2019), criminal damage to property (McHenry County, 2013), driving under the influence (DUI) (Cook County, 2006), and reckless driving (Kane County, 2006).  Defendant's driver's license was suspended on July 13, 2006, because of the DUI conviction.

¶ 6     A copy of the police synopsis was also admitted into evidence without objection. According to the synopsis, on September 23, 2024, at 1:57 a.m., police were dispatched to an apartment in Elgin in response to an emergency call for domestic battery.  The caller, M.L., stated that defendant grabbed her neck, and that she locked herself in the bathroom and remained in fear for her life.

¶ 7     After arriving at the apartment, police found that defendant and M.L. were both intoxicated. They had been dating for several months and were living together at the apartment.  That night, defendant became upset with M.L. because she was on the phone with her son's father, Lonnie.

M.L. stated that defendant choked her neck with his right hand. According to M.L., defendant told her that she was "just a bitch, just like every other f***ing woman." Defendant also applied pressure on M.L.'s jaw. She told defendant several times to stop and that she could not breathe. She said that defendant put his knees on her chest while she was lying on the ground. M.L. told police that she lost consciousness when she was choked. After she woke up, she told defendant to leave. She stated that Lonnie was still on the phone during the dispute. Police noted that a fresh red mark was observed on the left side of M.L.'s neck. Photos of the injuries were taken. Police also noted that M.L.'s voice was raspy and hoarse.

¶ 8 Defendant told police, "I'm a stupid a***, a piece of s***. I'm a f***ked up [sic]." He stated that he and M.L. got into an argument over "different points" but denied that things got physical between them.

¶ 9 Police additionally spoke to Lonnie. He told police that he could hear defendant pushing and hitting M.L. through the phone. He stated that defendant grabbed M.L. by her neck and he heard defendant yell, scream, and call M.L. names. He also heard M.L. say "help me."

¶ 10 The State argued that the police synopsis provided clear and convincing evidence that defendant committed the charged offenses. The State further argued that, because of the nature of the crime and his significant criminal history, defendant posed a risk of danger to M.L. and that no conditions of release could mitigate the risk.

¶ 11 Defendant argued that the State did not meet its burden of proving that he committed the charged offenses because it relied solely on the police synopsis and did not submit any corroborating evidence, such as the photographs taken by police. Defendant also proffered that he worked full-time receiving and managing the inventory of a store. He stated that he had 12 children for whom he paid child support. He suffered neuropathy from the waist down and required

medication, which he had not received while detained. He said that he had options for places to stay if released, including with a friend in Elgin or with his parents in Chicago. He argued that GPS or other monitoring would mitigate any risk to M.L.

¶ 12    The trial court found that the State proved by clear and convincing evidence that the proof is evident and the presumption is great that defendant committed the charged offenses. The trial court based this finding on the police synopsis and noted that the State was not required to submit the police photographs as corroborating evidence under the Code.

¶ 13    The trial court also found that defendant posed a real and present risk of danger to the victim. It found that the proffered evidence showed that defendant's actions were sudden and disproportionate to the situation. The trial court also noted defendant's relatively recent convictions for domestic battery, which showed a pattern of similar behavior. The trial court next found that no condition or combination of conditions could mitigate this risk. The trial court focused on defendant's repeated convictions for driving with his license suspended as evidence of defendant's inability to follow the laws of the State or conditions of release. The trial court considered GPS and electric home monitoring (EHM) as possible conditions of release. However, as those require adherence to rules and only show location but not what is occurring at that location, the trial court concluded that these conditions could not adequately protect M.L.

¶ 14    On September 25, 2024, defendant filed a motion for relief under Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024). The trial court denied the motion at a hearing on October 3, 2024.[1] Defendant appealed.

---

[1] After the trial court denied defendant's motion for relief on October 3, 2024, defendant presented new information supporting his request for pretrial release. The trial court again denied defendant pretrial release and advised defendant that he would need to submit a separate motion for relief under Rule 604(h) to pursue an appeal of that order. Though the State raises arguments related to that order, the record does

¶ 15         II. ANALYSIS

¶ 16 In Illinois, all persons charged with an offense are eligible for pretrial release.  725 ILCS 5/110-2(a), 110-6.1(e) (West 2022).  Pretrial release is governed by article 110 of the Code as amended by the Act.  *Id.* § 110-1 *et seq*.  Under the Code, as amended by the Act, a defendant's pretrial release may only be denied in certain statutorily limited situations.  *Id.* §§ 110-2(a), 110-6.1(e).

¶ 17 Upon filing a verified petition requesting denial of pretrial release, the State has the burden to prove, by clear and convincing evidence, that (1) the proof is evident or the presumption great that the defendant has committed a qualifying offense (*id.* § 110-6.1(e)(1)), (2) the defendant's pretrial release would pose a real and present threat to the safety of any person or persons or the community (*id.* § 110-6.1(e)(2)), and (3) no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community or prevent the defendant's willful flight from prosecution (*id.* § 110-6.1(e)(3)).  "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question ***."  *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74.

¶ 18 We review the trial court's decision to deny pretrial release under a bifurcated standard. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13.  Specifically, we review under the manifest-weight-of-the-evidence standard the court's factual findings as to dangerousness, flight risk, and whether conditions of release could mitigate those risks.  *Id.*  A finding is against the manifest weight of the evidence only where it is unreasonable or not based on the evidence presented.  *Id.* We review for an abuse of discretion the trial court's ultimate determination regarding pretrial

---

not show that a second motion for relief was filed, and defendant does not advance any arguments related to those proceedings on appeal.  We therefore do not address any issues related to those proceedings.

release. *Id.* An abuse of discretion also occurs only when the trial court's determination is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court. *Id.*

¶ 19    Defendant declined to file a memorandum, so his motion for relief serves as his argument on appeal. See Illinois Supreme Court Rule 604(h)(7) (eff. April 15, 2024). Defendant first argues that the State failed to meet its burden of proving by clear and convincing evidence that the proof is evident or the presumption is great that defendant committed the charged offenses. Specifically, defendant contends that the State did not meet its burden because it relied solely on the police synopsis without corroborating evidence such as the photographs of the victim's injuries. Defendant's argument is without merit. We have repeatedly held that a detailed police synopsis is sufficient to meet the State's burden under the Act. See *People v. Mancilla*, 2024 IL App (2d) 230505, ¶ 24; *People v. Horne*, 2023 IL App (2d) 230382, ¶ 24.

¶ 20    Next, defendant argues that the State failed to meet it burden of proving by clear and convincing evidence that defendant posed a real and present threat to the victim. The Code provides a nonexclusive list of factors that the trial court may consider when making a determination of "dangerousness," *i.e.*, that a defendant poses a real and present threat to any person or the community. 725 ILCS 5/110-6.1(g) (West 2022). Specifically, in making this determination, the court may consider evidence or testimony as to factors that include, but are not limited to: (1) the nature and circumstances of any offense charged, including whether the offense is a crime of violence involving a weapon or a sex offense; (2) the history and characteristics of the defendant; (3) the identity of any person to whom the defendant is believed to pose a threat and the nature of the threat; (4) any statements made by or attributed to the defendant, together with the circumstances surrounding the statements; (5) the age and physical condition of the

defendant; (6) the age and physical condition of the victim or complaining witness; (7) whether the defendant is known to possess or have access to a weapon; (8) whether at the time of the current offense or any other offense, the defendant was on probation, parole, or supervised release from custody; and (9) any other factors including those listed in section 110-5 of the Code. *Id.* The statute does not list any singular factor as dispositive. *Id.*

¶ 21 Here, we agree with the trial court's analysis and conclusion. The trial court considered several of the factors in finding the State proved defendant's dangerousness. The trial court considered the nature of the crime, including that the fight escalated to the point that defendant choked M.L. until she lost consciousness. This escalation, the trial court found, "appears to have basically come out of nowhere." The trial court also noted defendant's two previous convictions for domestic battery within the last five years. The trial court concluded that the present offenses and his previous criminal convictions show a pattern of violence that endangers M.L.'s life. This finding is well supported by the record.

¶ 22 Finally, defendant argues that the State failed to meet its burden of proving by clear and convincing evidence that no conditions of release could mitigate any threat he posed to M.L. Where the trial court finds that the State proved a valid threat to the safety of any person or the community, the court must determine which pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." *Id.* § 110-5(a)(1)-(6) (West 2022). In reaching its determination, the trial court must consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the seriousness of the threat the defendant poses to any person or the community. *Id.*

¶ 23    Here, we cannot say the trial court's conclusion was against the manifest weight of the evidence.  The trial court considered GPS and EHM as possible conditions of release.  The trial court looked to defendant's extensive criminal history, especially his repeated convictions for driving with a suspended license, and determined that defendant demonstrated an inability to follow the laws of the State and conditions of release.  Given this history and the violent allegations of the present charges, the trial court determined that no conditions of release could adequately protect M.L.  This determination is again supported by the record.

¶ 24    Accordingly, the trial court did not abuse its discretion in ordering defendant's pretrial detention.

¶ 25                                    III. CONCLUSION

¶ 26    For the reasons stated, the judgment of the circuit court of Kane County is affirmed.

¶ 27    Affirmed.