2025 IL App (2d) 250030-U
No. 2-25-0030
Order filed April 14, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 24-CF-2496 |
| CHANCE M. CAGER, | ) ) ) | Honorable John A. Barsanti, and Salvatore LoPiccolo, Jr., |
| Defendant-Appellant. | ) | Judges, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices McLaren and Hutchinson concurred in the judgment.

**ORDER**

¶ 1   *Held*: Circuit court's detention order is affirmed, where the police synopsis related that police observed injuries on the victim consistent with her allegations, defendant has a violent criminal history, and where he was discharged off parole several months before the acts alleged in this case.

¶ 2   Defendant, Chance M. Cager, appeals from the circuit court's order granting the State's request to deny him pretrial release, pursuant to section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2022)), as amended by Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act). See also Pub. Act 102-1104, § 70

(eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (setting the Act's effective date as September 18, 2023).

¶ 3                                   I. BACKGROUND

¶ 4      On November 20, 2024, the State charged defendant with aggravated domestic battery – strangle (720 ILCS 5/12-3.3(a-5) (West 2022)) (class 2), domestic battery - bodily harm - other prior conviction (*id.* § 12-3.2(a)(1)) (class 4), domestic battery - physical contact - other prior conviction (*id.* § 12-3.2(a)(2)) (class 4), domestic battery - bodily harm (*id.* § 12-3.2(a)(1)) (class A), and domestic battery - physical contact (*id.* § 12-3.2(a)(2)) (class A).  Defendant was arrested on January 1, 2025.

¶ 5      On January 2, 2025, the State filed a verified petition to deny defendant pretrial release, alleging that defendant was charged with a forcible felony offense or any other felony involving the threat of or infliction of great bodily harm and charged with domestic battery or aggravated domestic battery and defendant's pretrial release posed a real and present threat to the safety of any person or the community.  Further, the State alleged, as additional grounds upon which defendant should be denied pretrial release, that defendant had a significant criminal history.  The State listed several Kane County cases: (1) 2009CF3158 - robbery (class 2 felony); burglary (class 2 felony); mob action (class 4 felony); unlawful restraint (class 4 felony) - five years' imprisonment on August 4, 2010; (2) 2015CF606 - aggravated battery to a peace officer (class 2 felony) - three years' imprisonment on September 8, 2017; (3) 2016CF487 - criminal damage to government supported property (class 4 felony) - one year imprisonment on September 8, 2017; (4) 2017CM1984 - domestic battery - bodily harm (class A misdemeanor) - convicted on September 8, 2017 (a different complaining witness than the one in the current case); and (5) 2021CF1350 - battery (class A misdemeanor) - convicted on November 1, 2023.  The State also

listed several Cook County cases: (1) "24MC3003837" - assault (class C misdemeanor) - December 15, 2024, date of offense - case pending; (2) "2400130301" - resisting a peace officer (class A misdemeanor) - March 25, 2024, date of offense - pending; (3) "22CR038401" - unlawful use of a weapon by a felon (class 2 felony) - four years' imprisonment on May 18, 2022; discharged off parole on July 23, 2024; and (4) "2021 CF 00038401001 - 22 CR 038401" - unlawful use of a weapon by a felon (class 2 felony) - four years' imprisonment on May 18, 2022; discharged off parole on July 23, 2024.[1]

¶ 6     The police synopsis, which was admitted at the hearing, related that, on November 15, 2024, West Dundee police officers were dispatched to 944 Locust Drive to assist Sleepy Hollow police with a domestic battery report. The caller, Tamika Jones, had reported being punched in the jaw by her husband, defendant. Jones drove off in a black Toyota Camry, and officers located the vehicle in Sleepy Hollow. They made contact with Jones, who was upset and crying. Her jaw/cheeks were red and swollen, and there was a small streak of blood on her shirt. Jones' child, T'A.J., was calm and secured in a car seat behind the passenger seat. Jones related that, while she was in the front passenger seat as defendant drove, they began to argue. When their vehicle approached the intersection of west Main Street and north 8th Street, defendant struck Jones with a closed fist of his left hand on her left cheek. The inside of Jones' lip bled. They continued on westbound Main Street until defendant pulled into the LifeZone360 parking lot and stopped the car. Defendant continued to yell at Jones and struck her multiple times in the face. Jones was unable to recount the number of times she was struck or if it was with an open or closed fist.

_____

[1]The State later acknowledged that the third and fourth Cook County cases were duplicative of each other.

Defendant then put Jones in a headlock, wrapping his arm around her face and neck. Jones felt like she could not breathe and was going to pass out. Defendant held her in a headlock for about three seconds before letting go. Defendant drove the rest of the way to 944 Locust Drive, where he got out of the vehicle and told Jones not to call the police. Jones got into the driver's seat and drove away with T'A.J., leaving defendant standing in the parking lot. Jones was not sure where defendant went after she left. The synopsis further related that defendant had fled the area before the police arrived, and he was not taken into custody.

¶ 7 The Cook County misdemeanor complaint in case No. 24MC3003837 listed above, filed on December 16, 2024 (and admitted over defense counsel's objection), related that Jones accused defendant of assault, alleging that he threatened her and raised his arms, created a closed fist, and made a motion as if he was going to strike her. He then grabbed a gaming console and made a motion as if he was going to strike her with it, stating "I'm going to smack you, I'm going to choke you before the police get here," causing Jones to be in fear of receiving a battery.

¶ 8 Jones' verified March 23, 2024, petition for order of protection (which was admitted over defense counsel's objection) related that, on March 22, 2024, in the evening, defendant showed up at Jones' residence while she was at work. When Jones arrived home, defendant came out of nowhere and she let him in because she was afraid. Defendant started fighting Jones, grabbing and pushing her face and grabbing her hair. Jones alleged that she was 32 weeks pregnant, of which defendant was aware. Defendant asked for her keys, and Jones told him no. Defendant took her bag from her, pushed Jones to the ground, kicked her, and ran out the door with her bag (which contained her keys, credit cards, and identification). Jones called 911 and made a police report. She went to the hospital via ambulance, as she was afraid for her unborn child. She was admitted overnight. Next, Jones alleged that, in February 2024, defendant informed her that he

was coming to pick up something that he had left at her residence. She allowed him in because he frequently threatened Jones if she did not let him in. Defendant refused to leave and began physically abusing Jones, specifically, choking her, pushing her around, and pulling Jones' hair. Defendant had a knife and threatened to kill Jones. Jones alleged that she was 32 weeks pregnant, of which defendant was aware. She ran into a bedroom, locked the door, and called police. Defendant fled before the police arrived. Jones filed a report about the incident. Her lip was swollen from the incident and police photographed her injury. Finally, Jones related that, regularly, defendant physically and verbally abused her. She had a previous order of protection that was dismissed, as she was unable to attend court. Jones asserted that she detailed several other incidents of abuse in that order of protection, including threats to shoot and kill her and her family.

¶ 9     At the hearing on the State's petition to detain, the prosecutor tendered a copy of a complaint in Du Page County case No. 24CF2011, of which defense counsel acknowledged receipt. The date of the offense was September 6, 2024, and, in the first count, defendant was charged with aggravated battery to a peace officer, wherein defendant allegedly hit away a police officer's arm while the officer was preventing defendant from approaching Jones during a domestic disturbance where he had threatened her. In a second count, defendant was charged with criminal damage to property of less than $500, wherein he allegedly threw a set of Jones' keys. A form given to defendant and signed by him on September 7, 2024, stated that he was not to commit any criminal offenses.

¶ 10     The State argued that it had met its burden to show that the proof was evident and presumption great that defendant committed detainable offenses, noting the police synopsis. The State also asserted that defendant had a prior domestic battery conviction (case No. 17CM1984). It argued that Jones' allegations reflected a strangulation, as she stated that she could not breathe

for three seconds and thought that she was going to pass out. The officers also observed injuries on Jones that, the State asserted, were consistent with her allegations. The State further argued that it had established dangerousness, noting the crime alleged was one of violence, and referencing defendant's criminal history, which was indicative of violent, abusive, and assaultive behavior. Further, addressing defendant's criminal history, the State noted that it includes forcible felonies. The State also referenced the order of protection, noting that an emergency order was granted but was then dismissed when the parties failed to appear, and the pending assault case, noting that there were allegations that defendant threatened to strike Jones with his fists and a gaming console. It noted that defendant had pleaded guilty to unlawful use of a weapon by a felon, which indicated that he was known to possess or have access to weapons.

¶ 11     The State argued that no conditions or combination thereof could mitigate the threat defendant posed. It relied on his criminal history, including that he was on juvenile probation and committed two forcible felonies, convicted of aggravated battery in 2015, committed domestic battery while on release, and convicted of criminal damage to property and domestic battery committed while on "bail or bond" and to which he pleaded guilty. Addressing GPS and electronic home monitoring (EHM), the State noted that defendant does not live in Streamwood (which is in Cook County). GPS and EHM would not, it asserted, mitigate any threat because defendant would be allowed out for many hours.

¶ 12     The State added that defendant had several juvenile adjudications. In Kane County case No. 06JD376, he received an adjudication for class A battery and it was terminated unsatisfactorily on September 8, 2010. In case No. 07JD171, he was adjudicated delinquent on a class A battery, and was terminated unsatisfactorily on September 8, 2010. While on juvenile probation for that case, defendant was arrested for a robbery in Kane County case No. 09JD336 (date of offense:

June 12, 2009) and charged in Kane County case No. 09CF3158 (date of offense: October 28, 2009).

¶ 13    Defense counsel proffered that defendant worked full time at Weber Grill as a painter, has six children (and three of them live with his mother and one lives with him), and he financially supported all his children (ages 15, 14, 9, 4, 3 and 7 months).  Defendant was staying at his mother's house in Hampshire and at his brother's home in Dundee.  Defendant and Jones were separated and share a seven-month-old child.  Counsel asserted that defendant and Jones have had a cordial relationship since their separation and had been in contact but did not live together.  Addressing the evidence concerning whether the proof was evident and presumption great that defendant committed detainable offenses, defense counsel argued that, as related in the police synopsis, a strangulation would be physically difficult to occur.  Also, referencing the order of protection, counsel asserted that Jones was an unreliable narrator, where she asserted in both February and March 2024 that she was 32 weeks pregnant and where she asserted she called 911 and the police took a report (but there was no report).  Counsel also argued that, other than the present case, no injuries corroborated her allegations.  Next, addressing dangerousness, counsel argued that the State did not establish that there was real and present threat, where the parties had an amicable relationship since November 18, 2024, with the exception of the argument that resulted in the Cook County charges.  Finally, defense counsel asserted that conditions could mitigate any threat defendant posed, including a no-contact order and EHM at his brother's or mother's address.  Defendant also could be placed on GPS monitoring and leave Jones' residence in the protected zone.

¶ 14    The circuit court granted the State's petition.  It found that the State met its burden to show that the proof was evident and presumption great that defendant committed detainable offenses

(domestic battery class 4 and class A offenses). It based its finding on the police synopsis, which contained information that the police observed injuries that corroborated Jones' allegations, excluding any observations concerning her neck. The court also found that the State had established dangerousness, again relying on the Cook County complaint, which reflected that, when they were together a second time on December 15, defendant threatened acts similar to those alleged in this case—choking Jones and striking her. The court noted that defendant's last known address was Jones' address in Streamwood. Defendant's criminal history includes crimes of violence. Addressing Jones' reliability, the court found that, given their child's birth in May 2024, Jones would have been 32 weeks pregnant in March 2024. Finally, the court found that no conditions or combination thereof could mitigate any threat defendant posed, where defendant has a history of failing to comply with court orders. While on juvenile probation, he was arrested and adjudicated delinquent of robbery, and he was arrested and pleaded guilty to another count of robbery and burglary. He also committed offenses while out on bond "throughout his adult life." Defendant, the court further found, also has a history of not following conditions of probation and conditions of bond. "And in order for EHM or GPS to work, this defendant has to follow the rules." By committing new offenses that are violent offenses, the court determined, defendant demonstrated an inability to comply with conditions. GPS monitoring and EHM would not protect Jones from dropping off the child for visitation or going to visit defendant; they would not tell police what defendant is doing or who he is with. (In granting the State's petition, the court further imposed a condition that defendant have no contact with Jones.)

¶ 15    On January 13, 2025, defendant filed a motion for relief, arguing that the State failed to meet its burden to show (and the court erred in finding) that the proof was evident and presumption

great that defendant committed the charged offenses, he posed a real and present threat to Jones, and that no conditions could mitigate that threat.

¶ 16    On January 15, 2025, a hearing was held on defendant's motion.  Defense counsel argued that defendant has six children that he supported, one of which lived with him prior to his arrest. He also was employed and would have that job if released.  Further detention, counsel asserted, would cause a severe hardship on the financial support of defendant's children.  Defense counsel also requested the court to consider that defendant's mother was present on Zoom.  If released, defendant would reside with his mother in Hampshire, an address that would be served by house arrest, if the court deemed it appropriate.  Counsel noted that, at the detention hearing, the court did not find that defendant committed the highest charge—class 2 strangulation.  Counsel also argued that defendant was not a real and present threat to Jones or anyone in the community, where the date of the offense was November 15, 2024, and defendant was not arrested until January 1, 2025.  Counsel also asserted that conditions could mitigate any threat defendant posed, such as a no-contact or stay-away order, and a pretrial supervision level deemed appropriate by the court. The State responded by referencing the police synopsis.  It also noted that defendant was on pretrial release in two separate matters involving Jones: Cook County case No. 24MC3003837 (class C assault) and Du Page County case No. 2024CF2011 (date of offense: September 6, 2024; class A criminal damage to property, class 2 aggravated battery to a peace officer, and criminal damage to property).  The State also referenced defendant's criminal history and noted that it included a 2022 class 2 unlawful possession of a weapon by a felon for which he was sentenced to four years' imprisonment and discharged from parole on July 23, 2024.  Defense counsel, in reply, noted that defendant was not on pretrial release in this case when he was arrested in Cook County because he had not yet been arrested in this matter.

¶ 17     The circuit court denied defendant's motion, finding that the proof was evident and presumption great that defendant committed detainable offenses, he posed a real and present threat to Jones, and that no conditions could mitigate that threat. After the date of this offense, the court noted, defendant was arrested and charged with other offenses, which reflected a threat to Jones' safety, as she "is a multiple time victim of this defendant."

¶ 18     On January 15, 2025, defendant filed a notice of appeal. On February 21, 2025, the Office of the State Appellate Defender (OSAD) filed, pursuant to Illinois Supreme Court Rule 604(h)(7) (eff. Apr. 15, 2024), a notice in lieu of memorandum. On March 7, 2025, the State filed a memorandum in opposition to defendant's appeal.

¶ 19                                  II. ANALYSIS

¶ 20     Defendant argues that the State did not meet its burden to show that: (1) the proof is evident and presumption great that he committed detainable offenses, (2) he posed a real and present threat to the safety of any person or the community, and (3) that no conditions or combination thereof can be imposed that would mitigate the real and present threat to the safety of any person or the community based on the specific articulable facts of the case. For the following reasons, we reject his arguments.

¶ 21     Where, such as here, the detention hearing was conducted solely by way of proffer and evidence otherwise documentary in nature and where no live testimony was presented, we review *de novo* the circuit court's determination. *People v. Morgan*, 2025 IL 130626, ¶¶ 51, 54. Because OSAD filed a notice in lieu of memorandum, we consider only the arguments asserted in defendant's motion for relief. See Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024) ("The motion for relief will serve as the argument of the appellant on appeal.").

¶ 22   The State argues that defendant waived his arguments on appeal, because the motion for relief does not contain sufficient detail and contains merely conclusory assertions. *Id.* ("the form of the appellant's arguments must contain sufficient detail to enable meaningful appellate review, including the contentions of the appellant and the reasons therefore and citations of the record and any relevant authorities"). We conclude that the motion for relief as a whole and the transcript of the hearing on the motion provide sufficient detail of defendant's arguments.

¶ 23   Under the amended Code, every person charged with an offense is presumed eligible for pretrial release. 725 ILCS 5/110-2(a), 6.1(e) (West 2022). The State must file a verified petition requesting the denial of pretrial release, and the circuit court shall hold a hearing on the petition. *Id.* § 110-6.1(a). When seeking denial of pretrial release, the State bears the burden of proving by clear and convincing evidence that (1) the proof is evident or presumption great that the defendant committed a detainable offense; (2) the defendant poses a real and present threat to the safety of any person, persons, or the community, based on the specific, articulable facts of the case; and (3)

> "no condition or combination of conditions set forth in subsection (b) of Section 110-10 of this Article can mitigate (i) the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, for offenses listed in paragraphs (1) through (7) of subsection (a), or (ii) the defendant's willful flight for offenses listed in paragraph (8) of subsection (a)." *Id.* § 110-6.1(e)(1)-(3).

Section 110-10(b) provides a list of pretrial conditions that may be imposed. *Id.* § 110-10(b). Conditions that may be imposed include restrictions on out-of-state travel, reporting requirements, restraining orders as to certain people or places, home supervision with or without electronic monitoring, and "other reasonable conditions" as the least restrictive means to ensure compliance with the law. *Id.*

¶ 24    To set appropriate conditions of pretrial release, the circuit court must determine, by clear and convincing evidence, what pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." *Id.* § 110-5(a). In reaching its determination, the circuit court must consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; (4) the nature and seriousness of the specific, real, and present threat to any person that would be posed by the defendant's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. *Id.* The statute lists no singular factor as dispositive. See *id.*

¶ 25    In his motion for relief, defendant asserted in a conclusory fashion that the State did not meet its burden to show that the proof was evident and presumption great that he committed detainable offenses. At the hearing on his motion, defense counsel merely asserted on this issue that the court had not found that the State met its burden as to the highest charge of strangulation. As counsel made no argument concerning the court's findings on the remaining charges, we conclude that defendant's claim fails. Regardless, at a pretrial detention hearing, the State is explicitly permitted to present evidence "by way of proffer based upon reliable information." 725 ILCS 5/110-6.1(f)(2) (West 2022); see *id.* § 110-6.1(f)(5) (exempting detention hearings from the rules of evidence). A police synopsis alone is sufficient to sustain the State's burden. *People v. Horne*, 2023 IL App (2d) 230382, ¶ 24. The synopsis here contained ample evidence to show that the proof was evident and presumption great that defendant committed the charged detainable offenses.

¶ 26    Next, defendant argues that the State did not meet its burden to show that he posed a real and present threat to the safety of any person or the community.  At the hearing, defense counsel asserted that the offenses allegedly occurred on November 15, 2024, but defendant was not arrested until January 1, 2025.  Thus, he was "out of custody" for over one month before his arrest and (presumably) did not pose a threat to Jones during that period.

¶ 27    We find this argument unavailing.  The charges in this case involve domestic battery, which is a violent crime.  Jones related that, after she and defendant argued while defendant drove, he struck her with a closed first on her left cheek and thereafter struck her multiple times in the face (while their child was secured in a car seat).  This was corroborated by police, who observed that Jones' jaw/cheeks were red and swollen and there was a small streak of blood on her shirt.  Further, defendant's adult criminal history, which spans 2009 to the present, includes another domestic battery (involving a different complaining victim; he was convicted of that crime in 2017) and unlawful use of a weapon by a felon (from which he was discharged off parole four months before the date of the alleged offenses in this case).  The fact that defendant was "out of custody" for 1 1/2 months before his arrest in this case does not preclude a dangerousness finding.  During that period, he was charged (and the case remains pending) in Cook County with misdemeanor assault for allegedly threatening to strike Jones.  His alleged actions in that case are similar to those alleged here and to the actions alleged in the March 2024 petition for order of protection.  Finally, in September 2024, defendant was charged in Du Page County with aggravated battery to a peace officer and criminal damage to property arising out of a domestic disturbance where he had threatened Jones.  All of the foregoing support a finding of a real and present threat to Jones.

¶ 28    Finally, defendant argues that the State failed to meet its burden to show that no condition or combination thereof could be imposed that would mitigate the threat he posed.  Defense counsel

noted that the charges were for probationable class 4 and A offenses and a stay-away order and pretrial supervision level that the court deemed appropriate would mitigate any threat defendant posed. Counsel also noted that defendant would have a job if released, he financially supported his six children (one of whom resided with him), and that his mother, with whom he would live if put on EHM, was present at the hearing via Zoom.

¶ 29 We reject defendant's argument and agree with the circuit court that no conditions or combination thereof could mitigate the threat defendant poses. Defendant's criminal history and pattern of violence support such a conclusion. As noted, defendant was discharged from parole only four months before the alleged offenses in this case, he has an extensive criminal history that includes another domestic battery, and he was charged in September 2024 with aggravated battery to a peace officer and criminal damage to property arising out of a domestic disturbance where he had threatened Jones, and, two months later, allegedly engaged in domestic violence against Jones, which led to the charges in this case. Further, EHM/GPS would likely not mitigate any threat defendant poses, because he would be allowed at least two days of movement in the community. See 730 ILCS 5/5-8A-4(A-1) (West 2022) ("[a]t a minimum, any person ordered to pretrial home confinement with or without electronic monitoring must be provided with movement spread out over no fewer than two days per week, to participate in basic activities such as those listed in paragraph (A)"). Given defendant's history of not complying with court orders, the State met its burden of showing that defendant would not likely stay away from Jones during those two days.

¶ 30                          III. CONCLUSION

¶ 31 For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 32 Affirmed.